**ALTOONA CLAY PRODUCTS, INC.,**
a corporation, Plaintiff,

v.

**DUN & BRADSTREET, INC.,** a corporation, Defendant,

v.

**C. R. GROVE,** Joined as plaintiff by Court Order.

Civ. A. No. 63-724.

United States District Court
W. D. Pennsylvania.

Oct. 27, 1965.

John E. Evans, Jr., Evans, Ivory & Evans, Pittsburgh, Pa., for plaintiff.

Clyde A. Armstrong, Thorp, Reed & Armstrong, Pittsburgh, Pa., for defendant.

WEBER, District Judge.

In this diversity action for libel the Court had previously held that the false report of the entry of a judgment against plaintiff corporation supplied to certain inquiring subscribers of defendant's mercantile credit reporting system was not libel per se, and required

proof of special damages. (37 F.R.D. 460). The defendant had also moved for summary judgment on the ground that items of special damages were not specifically pleaded in the complaint as required by Rule 9(g) of the Fed. R. of Civ. P., and by the substantive law of Pennsylvania, which required the allegations of special damages to support the cause of action .pleaded here. Bogash v. Elkins, 405 Pa. 437, 176 A.2d 677 (1962). The Court denied the defendant's motion for summary judgment because it was raised after defendant had availed itself of extensive discovery procedure by which it learned or could have learned all of the details of special damages upon which plaintiff was relying. Mil-Hall Textile Co. v. Dun & Bradstreet, Inc. D.C., 160 F.Supp. 778 (1958). We felt, however, that had timely action been taken by defendant, plaintiff's allegation of special damages in the complaint would have been insufficient to sustain the cause of action for libel per quod. See 37 F.R.D. at 464.

The plaintiff, being thus on notice of the requirement of proof, proceeded to trial before a jury, and the presentation of plaintiff's evidence required several days. At the close of the plaintiff's evidence, defendant moved for a directed verdict on the ground, inter alia, that "plaintiff had failed to present any evidence of specific or precise or determinable money damages as required in a libel per quod." The Court granted this motion on this specific ground and a verdict was directed for defendant. Plaintiff has now moved for a new trial, limiting its averments of errors to those matters concerning the subject of damages, since this was the basis upon which the Court acted in directing the verdict.

In considering plaintiff's motion and in weighing all of the evidence and the inferences reasonably derived therefrom in the light most favorable to the plaintiff, we must first consider the evidence within the framework of the cause of action pleaded. Plaintiff's evidence showed that the publication was false, that it came to the attention of about a dozen of its suppliers who were extending credit to it on liberal terms, that at about the time of the publication and thereafter a number of these supplying firms became more restrictive of their credit both as regards to time and to amount, that certain suppliers demanded immediate settlement of accounts due beyond a certain date, that these demands exhausted its available ready cash, that because of limited credit arrangements with suppliers it did not submit bids to supply the brick on certain large building projects of the type which it formerly bid for, that the year 1963 was a very good year in the building trade for prospective sales as compared to the prior two years, and that its volume of sales for the year 1963 was less than that for the prior two years despite an increase in building activity, and at the close of business for the year 1963 it had suffered a loss of $18,000, its accounts payable exceeded his accounts receivable and it was forced to go out of business. The cessation of business and the consequent liquidation resulted in the forced sale of his business assets at a loss.

Opposed to this evidence, plaintiff's own evidence also shows that its sales had declined steadily from 1958, the inception of its business to the end of 1962, and that it had suffered a loss both in 1961 and 1962 prior to the publication of the alleged defamatory report. Plaintiff's own financial statements placed into the evidence showed that the plaintiff corporation suffered a severe shortage of working capital by reason of the retirement of the outstanding capital stock of a majority stockholder at the end of 1959. While the year 1960, the first year of operation under its new management, was a good year, the plaintiff's president had testified that this was due in large measure to a sales contract for an institution in West Virginia. Plaintiff attributed the sharp decrease in sales in 1961 and 1962 to adverse conditions in the building trade but the margin between its accounts receivable and accounts payable continued to be narrow

and again the financial report of plaintiff corporation showed that current liabilities exceeded current assets by the end of 1962.

■■ The decline in plaintiff's gross sales for 1963, after the publication of the alleged defamatory statement, follows the same path of decline as is exhibited in the prior three years. The loss of profit for the year 1963 following the alleged defamation, while considerably greater than the losses of the prior two years, has no probative value in view of the evidence of the continuous worsening condition of plaintiff corporation from 1960 on. The evidence does not show that the business has been conducted at a profit for a sufficient length of time and with such an established trade that profits could be reasonably ascertainable. 15 Am.Jur. Damages § 157.

■ Plaintiff's evidence also fails to establish a causal relationship between the credit report and any ensuing damages. The credit report in question was published on January 9, 1963, and plaintiff only became aware of it on April 11, 1963 by reason of a call from an irate creditor who interpreted the report to mean that plaintiff had mortgaged assets or real estate to secure a loan to finance accounts payable. This creditor testified that he had suggested such a course of action to plaintiff's president and plaintiff's president had stated that he had no assets which he could use as collateral. The irate creditor felt that he had been deceived and that plaintiff corporation had secured such a loan on its property and had paid other creditors but had failed to pay him. Even after the complete truth was made known to this creditor he still insisted upon arrangements to bring his account up to date by cash and notes, and thereafter imposed stricter credit terms. Plaintiff testified that other creditors in the months following the alleged defamatory report were pressing him and were restricting his credit terms and insisting upon payment of overdue accounts, but nowhere does it appear from any testimony that because of the report any single supplier cut off or curtailed plaintiff's credit. No single credit manager of plaintiff's supplying companies appeared to testify that this had been the result. Furthermore, there was no legally sufficient evidence to prove that any such credit restrictions resulted in any specific loss of sales which plaintiff might otherwise have made. While plaintiff's president and other witnesses testified that delivery of bricks to plaintiff's trucks at the supplier's plants was refused in some instances it was never shown that such refusal was directly related to the erroneous credit report.

As to the business which plaintiff's president testified he might otherwise have received, his testimony amounts to a failure on his part to submit bids for certain contracts to be awarded which he thought he might obtain because of prior business relationships. No specific figures as to the identity, size or amount of such prospective purchases, the prospective profit thereon, or other matters which would reduce such lost prospects to damages capable of computation were produced by plaintiff.

Plaintiff's cause of action falls within the following class:

"Restatement of the Law, Vol. III, *Torts*.

"Topic 6. DEFAMATORY COMMUNICATIONS CAUSING SPECIAL HARM.

§ 575. Slander Creating Liability Because of Special Harm.

One who falsely and without a privilege to do so publishes a slander which, although not actionable per se, is the legal cause of special harm to the person defamed, is liable to him."

Comment:

\* \* \* \* \* \*

b. *Special harm.* Special harm as the words are used in this Chapter is harm of a material and generally of a pecuniary nature. The special harm must result from conduct of a person other than the de-

famer or the one defamed which conduct is itself the result of the publication or repetition of the slander * * *. Loss of reputation to the person defamed is not sufficient to make the defamer liable under the rule stated in this Section unless it is reflected in material harm. * * * If, however, the loss of reputation results in material loss capable of being measured in money with approximate exactness, the fact that the lowered social standing resulting from the slander itself causes the acts which produce such loss does not prevent the tangible loss from being special harm.

* * * Special harm may be a loss of presently existing advantage, as a discharge from employment. It may also be a failure to realize a reasonable expectation of gain, as the denial of employment which, but for the currency of the slander, the plaintiff would have received." * * *

The general rule has also been summarized as follows:

53 C.J.S. *Libel and Slander* p. 364.

"§ 240. Compensatory Damages in General.

If the words are not actionable per se, there can be no recovery of general damages. Special damages are such as have actually occurred, computable in money, which are the natural, but not the necessary, result of the alleged wrong." * * *

■ The Pennsylvania cases require both the allegation and proof of specific item of damage to support the recovery. McDonald v. Lee, 246 Pa. 253, 92 A. 135, L.R.A.1916B, 915 (1914); Pritchard v. Wenger, 268 Pa. 114, 110 A. 726 (1920); Weaver v. Phillips, 231 Pa. 325, 80 A. 526 (1911); Hygienic Fleeced Underwear Co. v. Way, 35 Pa.Super. 229 (1908).

The Pennsylvania statute requires:

"(1) In an action for defamation, the plaintiff has the burden of prov-

ing, when the issue is properly raised:

\* \* \* \* \* \*

(f) Special harm resulting to the plaintiff from its publication." Act of 1953, Aug. 21, P.L. 1291, 12 P.S. § 1584a

The Pennsylvania rule has been summarized as follows:

"§ 443. WHAT CONSTITUTES SPECIAL DAMAGE.

To constitute special damage sufficient to render actionable the types of slander which are not actionable per se (See § 4401 supra), it is essential that it be made to appear that the slanderous utterance was a proximate or legal cause of plaintiff's sustaining a pecuniary loss in the sense of loss of something of material value from a dollar—and cents—point of view, as, for example, where it appears that by reason of such slander, plaintiff failed to secure a contract or other advantage that he otherwise would have gotten, or that he was discharged from his employment, or lost customers, etc." Summary of Pennsylvania Jurisprudence, Torts II § 443.

The most detailed statement of the Pennsylvania rule is contained in Shaines v. R. G. Dun & Co., 8 Pa.Dist. & Co. R. 597 (Phila. County, 1927). Under this case special damages means actual and concrete damages capable of being estimated in money, established by specific instances such as actual loss due to withdrawal of trade of particular customers, or actual loss due to refusal of credit by specific persons, all expressed in figures. These are requirements of pleading as well as proof. See Fowler v. Curtis Publishing Co., 86 U.S.App.D.C. 349, 182 F.2d 377 (1950).

■ Plaintiff has cited Smail v. Flock, 407 Pa. 148, 180 A.2d 59 (1962); Hoober v. New Holland Water Co., 43 Pa. Super. 262 (1910); Western Show Co. v. Mix, 308 Pa. 215, 162 A. 667 (1932), and Osterling v. Frick, 284 Pa. 397, 131

A. 250 (1925), in support of the proposition that uncertainty as to the amount of damages is not ordinarily grounds for refusing to allow any damages. While these are not cases of defamatory statements which rest upon proof of special damages to support the cause of action, nevertheless a reading of these cases leads us to the conclusion that while uncertainty as to an amount does not preclude the award of any damages, the evidence must be sufficient to furnish a basis from which a reasonable calculation can be made. In Osterling v. Frick, cite supra, the Court said: (p. 403, 131 A. p. 251)

"* * * damages * * * cannot be based on a mere guess or speculation, yet, where the amount may be fairly estimated from the evidence, a recovery will be sustained even though such amount cannot be determined with entire accuracy."

There is nothing in this entire record which would form a basis for any calculation by a jury of the damages which directly and proximately flowed from the defamation complained of.

Plaintiff relies heavily on the language of the Supreme Court of Arkansas in Dun & Bradstreet, Inc., appellants, v. Robinson, 233 Ark. 168, 345 S.W.2d 34, at page 45. There the trial court had determined that the defamation was libel per quod which required the production of proof of special damage. The court held that there was substantial evidence to show that the defendant acted with conscious indifference and reckless disregard of the rights of plaintiff in publishing the report and thus the protection afforded by the conditional privilege of the communication was lost. On a submission to the jury an award for special compensatory damages was made but no punitive damages sought by plaintiff were awarded. Defendant appealed on the grounds, inter alia, that there was no substantial evidence in the record to support a finding of either the fact or amount of damages accruing to plaintiff as a proximate result of the publication. A review of the reported decision shows that there was extensive testimony relative to the special damages, see pp. 40, 41, 42 and 43. The recital of this evidence in the opinion of the Arkansas Supreme Court clearly demonstrates that the nature, quantity and specific detail of the supporting evidence of damages in that case was far different from the case at bar. Despite the broad language of its concluding paragraphs as to the necessity of ascertainment of specific amounts lost, the Court concluded;

"Be that as it may, we deem the proof more than adequate to uphold special past compensatory damages in the amount of $10,000, and future special compensatory damages in the amount of $20,000." 345 S.W.2d at p. 45

The Robinson case, supra, was considered by the United States Court of Appeals for the 8th Circuit in Dun & Bradstreet, Inc., Appellant v. Nicklaus, 340 F.2d 882 (8th Cir. 1965), where it was contended by the appellant that the District Court erred in applying the standard of the Robinson case since this did not meet the federal standard of "substantial evidence" required to support a verdict, citing Hanson v. Ford Motor Co., 278 F.2d 586 (8th Cir. 1960). The Circuit Court was of the opinion that the District Court followed the "substantial evidence" standard and that the Robinson case did not depart from this rule. It held that from the evidence in the Robinson case, the jury could reasonably conclude that the plaintiff lost customers who were subscribers of defendant's reports, referring to specific items of evidence of special damage in the Robinson case. Our own reading of the decision in the Robinson case leads us to a conclusion that evidence in far greater detail as to specific customers lost as to specific items of income from an established trade, and as to other items of special damage distinguishes that case from the case at bar, which does not contain these elements of proof.

Defendant's motion for a directed verdict also urged the grounds of failure to allege or prove an innuendo from the

words used in the credit report; failure to prove malice on the part of the defendant; and the privileged status of the communication. Because of the position of the Court with respect to the issue of special damages the motion was granted solely on the basis of the failure of proof of special damage as set forth in the foregoing Opinion.

For the reasons set forth above the Motion for New Trial is denied.