

1999 Decisions

Opinions of the United
States Court of Appeals
for the Third Circuit

6-28-1999

# Beverly Entr Inc v. Trump

Precedential or Non-Precedential:

Docket 98-3222

Follow this and additional works at: http://digitalcommons.law.villanova.edu/thirdcircuit_1999

Recommended Citation

"Beverly Entr Inc v. Trump" (1999). *1999 Decisions.* Paper 173.
http://digitalcommons.law.villanova.edu/thirdcircuit_1999/173

This decision is brought to you for free and open access by the Opinions of the United States Court of Appeals for the Third Circuit at Villanova
University School of Law Digital Repository. It has been accepted for inclusion in 1999 Decisions by an authorized administrator of Villanova
University School of Law Digital Repository. For more information, please contact Benjamin.Carlson@law.villanova.edu.

Filed June 28, 1999

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT

NO. 98-3222

BEVERLY ENTERPRISES, INC.;
DONALD L. DOTSON

        Appellants

v.

ROSEMARY TRUMP;
SERVICE EMPLOYEES INTERNATIONAL UNION
LOCAL 585

On Appeal From the United States District Court
For the Western District of Pennsylvania
(D.C. Civil Action No. 97-cv-01490)
District Judge: Honorable Gary L. Lancaster

Argued December 11, 1998

BEFORE: BECKER, Chief Judge, and STAPLETON,
Circuit Judges, and HARRIS,* District Judge

(Opinion Filed June 28, 1999)

        Michael T. McMenamin (Argued)
        Walter & Haverfield
        50 Public Square
        1300 Terminal Tower
        Cleveland, OH 44113
         Attorney for Appellants
_____

*Honorable Stanley S. Harris, United States District Judge for the
District of Columbia, sitting by designation.

Claudia Davidson
Healey, Davidson & Hornack
Law & Finance Building, 5th Floor
Pittsburgh, PA 15219
 and
Harold C. Becker (Argued)
Associate General Counsel
Service Employees International
 Union
14 West Erie Street
Chicago, IL 60610
 Attorneys for Appellees

Geraldine R. Gennet
General Counsel
Kerry W. Kircher
Deputy General Counsel
Office of General Counsel
U.S. House of Representatives
219 Cannon House Office Building
Washington, D.C. 20515-6601
 Attorneys for Amicus Curiae
Bipartisan Legal Advisory Group of
the United States House of
Representatives

OPINION OF THE COURT

STAPLETON, Circuit Judge:

This diversity-based defamation action arises from statements allegedly made by a union representative about a company official during two separate incidents, one at a political rally and another at a "Town Hall meeting." The District Court dismissed the plaintiffs' complaint after finding the comments at the rally incapable of defamatory meaning and the Town Hall meeting comment protected under the doctrine of absolute testimonial immunity. Although for somewhat different reasons, we will affirm.

I.

There is a long-standing and acrimonious relationship between Beverly Enterprises, a national provider of nursing

2

home care, and the Service Employees International Union ("SEIU"), whose local affiliates represent a substantial number of Beverly's employees. Plaintiffs are Beverly Enterprises and Donald L. Dotson, Beverly's Senior Vice President for Labor and Employment. Before joining Beverly Enterprises, Dotson had a prestigious career in labor relations, serving as Chairman of the National Labor Relations Board and as Assistant Secretary for Labor-Management Relations at the U.S. Department of Labor. This suit arises from two incidents in which Rosemary Trump, President of Local 585 of the SEIU, allegedly made false and defamatory statements about Dotson and Beverly. Plaintiffs allege that, as a result of the statements uttered by Trump, Dotson and Beverly have suffered damage to their reputations. A district court's order dismissing a complaint is subject to plenary review. Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1997 (3d Cir. 1993). We accept as true all well-pleaded factual allegations in the plaintiffs' complaint and all reasonable inferences therefrom. Independent Enterprises v. Pittsburgh Water, 103 F.3d 1165, 1168 (3d Cir. 1997). The parties agree that Pennsylvania law governs this dispute.

II.

The first set of allegedly defamatory statements were made in August, 1996, at a political rally in Pittsburgh, Pennsylvania, sponsored by the Dole/Kemp presidential campaign. Plaintiffs allege that Trump approached Dotson in the midst of a large crowd, ascertained his identity as a Beverly official, and asked him whether he knew who she was. When Dotson said he did not, Trump became visibly upset, told Dotson he should know her, identified herself, and then began to berate Dotson in a loud and angry voice. Specifically, Trump accused Dotson of being a "criminal" and said that "you people at Beverly are all criminals." When Dotson tried to respond, Trump cut him off and angrily accused him of "devoting [his] entire career to busting unions." Despite Dotson's efforts at reasoned discourse, Trump continued berating Dotson, finally shouting at him: "I know your kind. You're just part of that World War II generation that danced on the graves of Jews."

3

Plaintiffs allege that these statements were false and defamatory as to both Dotson and Beverly Enterprises. Moreover, they allege that Trump uttered the statements with actual malice, and that, as a result of these statements, Dotson suffered damage to his reputation. The District Court concluded that each of the three statements at the rally were incapable of defamatory meaning because they constituted mere hyperbole and insulting rhetoric, all too common in labor disputes.

We begin by addressing Trump's alleged statements accusing Dotson of "union-busting" and referring to Dotson and others at Beverly as "criminals." By statute in Pennsylvania, a plaintiff in a defamation action has the burden of proving:

> (1) the defamatory character of the communication, (2) its publication by the defendant, (3) its application to the plaintiff; (4) the understanding by the recipient of its defamatory meaning; (5) the understanding by the recipient of it as intended to be applied to the plaintiff; (6) special harm resulting to the plaintiff from its publication, and (7) abuse of any conditional privilege.

42 Pa. C. S. S 8343(a) (West 1999).

The Pennsylvania Supreme Court has held that "[i]n an action for defamation, it is the court's duty to determine if the publication is capable of the defamatory meaning ascribed to it by the party bringing suit." MacElree v. Philadelphia Newspapers, Inc., 674 A.2d 1050, 1053 (Pa. 1996). "A communication is defamatory if it tends so to harm the reputation of another as to lower him in the estimation of the community or deter third persons from associating or dealing with him." Id. at 1055 (quoting Thomas Merton Center v. Rockwell Int'l Corp., 442 A.2d 213, 215 (Pa. 1981)).

Appellants contend that Trump's references to "criminals" and "union busting" were defamatory per se because they imputed criminal conduct to both Dotson and Beverly. 1

_____

1. Insofar as plaintiffs' allegations can be construed as alleging slander per se, plaintiffs are excepted from the requirement that they must also allege special damages. Baird v. Dun & Bradstreet, 285 A.2d 166, 171 (Pa. 1971); Clemente v. Espinosa, 749 F. Supp. 672, 677 (E.D. Pa. 1990) (construing Pennsylvania law).

4

Moreover, they argue that other attendees at the Dole/Kemp rally within earshot could reasonably have interpreted Trump's statements as alleging actual facts about Dotson and Beverly.

We disagree. Although Trump's statements were undoubtedly offensive and distasteful, the law of defamation does not extend to mere insult. Courts in Pennsylvania and elsewhere have long recognized a distinction between actionable defamation and mere obscenities, insults, and other verbal abuse. "[S]tatements which are merely annoying or embarrassing or no more than rhetorical hyperbole or a vigorous epithet are not defamatory." Kryeski v. Schott Glass Techn., Inc., 626 A.2d 595, 601 (Pa. Super. 1993) (quoting Redding v. Carlton, 296 A.2d 880, 881 (Pa. Super. 1972)); see also Greenbelt Cooperative Publishing Assoc. v. Bresler, 398 U.S. 6, 14 (1970) (finding that a statement that was "no more than rhetorical hyperbole, a vigorous epithet" was not slander). As the Restatement (Second) of Torts explains:

> A certain amount of vulgar name-calling is frequently resorted to by angry people without any real intent to make a defamatory assertion, and it is properly understood by reasonable listeners to amount to nothing more. This is true particularly when it is obvious that the speaker has lost his temper and is merely giving vent to insult. Thus when, in the course of an altercation, the defendant loudly and angrily calls the plaintiff a bastard in the presence of others, he is ordinarily not reasonably to be understood as asserting the fact that the plaintiff is of illegitimate birth but only to be abusing him to his face. No action for defamation will lie in this case.

Restatement (Second) of Torts S 566, comment e (1977).

Similarly here, Trump's exclamation that "you people at Beverly are all criminals" is reasonably understood as a vigorous and hyperbolic rebuke, but not a specific allegation of criminal wrongdoing. Trump's accusation that Dotson "devot[ed] [his] entire career to busting unions" is equally incapable of a defamatory construction. Appellants describe these statements as "mean-spirited . . .

5

accusations of illegal and immoral conduct." First, it is doubtful at best that an accusation of "union-busting" amounts to an insinuation of criminal activity. Even if it were so understood, however, the reasonable listener would recognize this statement as merely a vituperative outburst which, although undoubtedly offensive, it is not actionable in defamation. On this basis, we conclude that these two statements are incapable of defamatory meaning and thus cannot support an action in tort.

Plaintiffs' claim based on the third comment Trump allegedly made at the rally -- that Dotson was "part of that World War II generation that danced on the graves of Jews" -- fails for a different reason. As a rule, except as to allegations of slander per se, plaintiffs in slander actions must allege special damages beyond an injury to reputation. 42 Pa. C. S. S 8343(a)(6); Baird, 285 A.2d at 171 ("[i]t is a general rule that defamatory words are not actionable, absent proof of special damage"); Solosko v. Paxton, 119 A.2d 230, 232 (Pa. 1956) ("[g]enerally speaking, damages for defamatory words when spoken are not recoverable in the absence of proof of special damages"); Altoona Clay Prod. Inc., v. Dun & Bradstreet, Inc., 246 F. Supp. 419, 422 (W.D. Pa. 1965), rev'd on other grounds, 367 F.2d 625 (3d Cir. 1966) ("The Pennsylvania cases require both the allegation and proof of [a] specific item of damage to support the recovery."); Restatement (Second) of Torts, S 558(d). Whereas the aforementioned comments arguably impute criminal conduct to the plaintiff, and thus constitute allegations of slander per se, this accusation of bigotry does not fall within the narrowly defined categories of per se defamation. Clemente, 749 F. Supp. at 677 (citing the four categories of slander per se as words imputing the commission of a criminal offense, a loathsome disease, business misconduct, or serious sexual misconduct).

Consequently, as to the alleged statement imputing anti-Semitism, to survive a motion to dismiss, the plaintiff must go beyond a claim of injury to reputation and allege special damages. Typically considered as a pecuniary loss, special damages are "actual and concrete damages capable of being estimated in money, established by specific instances such as actual loss due to withdrawal of trade of particular

customers, or actual loss due to refusal of credit by specific persons, all expressed in figures." Altoona, 246 F. Supp. at 422; Restatement (Second) of Torts, S 575, comment b (special harm is "the loss of something having economic or pecuniary value"). Because plaintiffs have only alleged damage to their reputation, they have failed to meet this requirement.2

III.

The second incident in which plaintiffs allege that Trump made a defamatory statement was in May, 1997, at a "Town Hall meeting." According to the plaintiffs' complaint, the SEIU persuaded several members of Congress to convene the meeting in the Allegheny County Courthouse to discuss an item of federal legislation then pending in Congress. The bill, entitled the "Federal Procurement and Assistance Integrity Act," was designed to preclude businesses that are in violation of certain federal labor standards from obtaining federal contracts. Plaintiffs allege that the "true purpose" of the meeting was to provide a forum for disparaging Beverly Enterprises and, to that end, members of Congress were importuned to ask speakers about the adverse effects that the pending legislation would have on Beverly. Trump, an invited speaker, allegedly made the following statement in response to a question from Congressman Klink:

_____

2. Beverly also argues that it need not allege or prove special damages because Trump acted with actual malice. But Beverly confuses the requirements of special damages and actual damages. Under Pennsylvania law, where a defendant acts with actual malice, there is no need to prove actual damages. See Frisk v. News Co., 523 A.2d 347, 354 (Pa. Super. Ct. 1986) (citing Gertz v. Robert Welch, Inc., 418 U.S. 323 (1974)); Agriss v. Roadway Express, Inc., 483 A.2d 456, 467–68 (Pa. Super. Ct. 1985). This rule requires that, in the absence of actual malice, even if the plaintiff need only prove general damage to reputation, as in a defamation per se case, he or she cannot rely on a presumption of damages; he or she must offer actual specific evidence of such general damages. This is different from the principle of special damages (proof of which is excused in defamation per se cases, see Agriss, 483 A.2d at 468–75.)

7

CONGRESSMAN KLINK: Thank you. To Ms. Trump and Ms. Ford, just to clear up in my mind, why have we seen this problem exacerbated so much in Pennsylvania and we haven't seen it at the other Beverly locations across the country? What transpired in Pennsylvania to make the situation here much worse?

MS. TRUMP: Well, this is one of the most unionized, heavily unionized Beverly states, if not the most unionized Beverly state. They operate approximately 42 facilities in Pennsylvania, 20 of which are organized and we have had a history of bargaining that went very well. But quite frankly when President Clinton was elected and a new Chairman of the National Labor Relations [Board] was appointed, the former Chairman, Don Dotson, walked out of his federal government job and knocked on evidently the Beverly door and said, who knows more about all of your unfair labor practice cases in Beverly 1 and 2 than me since I have been supervising them on behalf of the government and besides which, I could really -- really this is conjecture on my part, but I can only assume that because they went out and recruited the former general counsel for the National Right to Work Committee. They decided that you're the largest chain of Beverly facilities, if we're able to break unionism in the Beverly chain, then, of course, it will have a ripple effect in the entire industry and the whole industry will operate nonunion.

Plaintiffs allege that the italicized statement by Trump is defamatory because it accuses Dotson of criminal violation of the Ethics in Government Act, 18 U.S.C. #8E8E # 201 et seq. ("EGA"). Specifically, plaintiffs allege that the "gist or sting" of Trump's statement is that Dotson (1) may have negotiated for employment with Beverly while Chairman of the NLRB, and (2) eventually represented Beverly in matters that were pending before the NLRB during his Chairmanship, both in criminal violation of federal government ethics laws. Further, plaintiffs allege that Trump's statement also implicates Beverly as a participant in a criminal conspiracy with Dotson toward these same ends. According to plaintiffs, these statements are false,

8

defamatory, and slanderous per se, as accusations of criminal conduct. On the basis of this statement, Dotson and Beverly claim to have sustained damage to their reputations.

The District Court dismissed this claim after concluding that Trump enjoyed absolute testimonial immunity for her statement. Like absolute judicial immunity, the common law testimonial immunity provides that:

> A witness is absolutely privileged to publish defamatory matter as part of a legislative proceeding in which he is testifying or in communications preliminary to the proceeding, if the matter has some relation to the proceeding.

See Jennings v. Cronin, 389 A.2d 1183, 1185 (Pa. Super. Ct. 1978) (quoting and adopting S 590A of the Restatement (Second) of Torts). After considering the scope, purpose, and format of the meeting, the District Court concluded that the meeting constituted a "legislative proceeding" for purposes of testimonial immunity. Moreover, because Trump was an invited speaker and made the allegedly defamatory statement in response to a question posed by a panel member, the District Court concluded that the statement was "part of " the legislative proceeding. Finding Trump's statement absolutely privileged, therefore, the Court dismissed plaintiffs' claim.

We see no need to consider the contours of absolute testimonial immunity in this case, however, because we find Trump's statement at the Town Hall meeting incapable of either of the defamatory constructions plaintiffs allege.3

_____

3. Plaintiffs contend that the District Court erred by considering matters outside the pleadings without converting defendants' motion into one for summary judgment. See Fed.R.Civ.P. 12(b). Specifically, plaintiffs contend the District Court erroneously considered a videotape of the meeting and a copy of the pending legislation at issue. Plaintiffs thus assert that "Dotson and Beverly must be provided the opportunity to rebut the extrinsic materials relied on by the District Court, and discover
Rule 56 evidence in support of their claims." Appellant's Brief at 23.

It is well-settled that in deciding a motion to dismiss, courts generally may consider only the allegations contained in the complaint, exhibits

Whether a reasonable listener could have construed Trump's statements as defamatory is a question of law to be determined by the court. Pierce v. Capital Cities Communications, Inc., 576 F.2d 495, 502 (3d Cir. 1978); Thomas Merton Ctr., 442 A.2d at 215-16; Restatement (Second) of Torts, S 614.

Plaintiffs allege that Trump's statement implicates Dotson and Beverly in violation of two separate provisions of the Ethics in Government Act. Construing the allegations in the complaint in the plaintiff 's favor, as we must, we nonetheless find neither of these interpretations reasonable. First, the act prohibits an executive branch officer from "personally and substantially" participating in a quasi-judicial proceeding if the officer is also negotiating prospective employment with an organization that has a financial interest in that proceeding. See 18 U.S.C. S 208. Plaintiffs' complaint alleges that Trump's statement asserts

───────────────────────────────────────────

attached thereto, and matters of public record. Pension Benefit Guar. Corp. v. White Consol. Indus. Inc., 998 F.2d 1192, 1196 (3d Cir. 1993). As the federal bill is a matter of public record, the District Court did not err in considering it before deciding defendants' motion to dismiss.

However, the District Court's opinion also reflects the Court's reliance on the videotape of the meeting, which was relevant to determining whether the meeting constituted a "legislative proceeding." For example, the District Court noted the relevance of several details only obtained from the videotape, such as one Congressman's opening words at the meeting, his reference to the meeting as a "field hearing," and the number of other members of Congress present as well as their relationship to the bill. Although "a court may consider an undisputedly authentic document that the defendant attaches as an exhibit to a motion to dismiss if the plaintiff's claims are based on the document," such exception does not apply here. See id. This exception prevents "a plaintiff with a legally deficient claim [from surviving] a motion to dismiss simply by failing to attach a dispositive document on which it relied." Id. In this case, however, defendants offered the videotape (and the District Court considered it) in support of their affirmative defense of testimonial immunity. Because the plaintiff was not given an adequate opportunity for discovery or to submit rebuttal evidence, we will treat the District Court's decision as a 12(b)(6) dismissal and will disregard the videotape of the meeting in conducting our plenary review of that decision. See Indep. Enterprises, 103 F.3d at 1168 n.2.

a violation of this provision insofar as she said that "when President Clinton was elected and a new Chairman of the National Labor Relations [Board] was appointed, the former chairman, Don Dotson, walked out of his federal government job and knocked on evidently the Beverly door . . . ." We find this interpretation of Trump's statement unreasonable. Not only is there nothing in Trump's statement to suggest that Dotson simultaneously sought employment from Beverly and supervised cases involving Beverly, but Trump's statement suggests to us just the opposite: that Dotson did not approach Beverly until after he left his government job.

Second, the Ethics in Government Act restricts former federal officers from representing another individual or entity in a matter formerly under the officer's supervision. See 18 U.S.C. S 207. Plaintiffs contend that Trump accused Dotson of violating this provision when she said,"Don Dotson, walked out of his federal government job and knocked on evidently the Beverly door and said, who knows more about all of your unfair labor practice cases in Beverly . . . than me since I have been supervising them on behalf of the government . . . ." Trump's statement, according to plaintiffs, amounts to an accusation that Dotson violated S 207 of the EGA "by representing Beverly in matters that had been pending before the NLRB during his Chairmanship." Again, we fail to see how a reasonable hearer of the statement Trump allegedly made could interpret it as plaintiffs suggest.

Trump's statement undeniably implies that Dotson sought to capitalize on his knowledge of the NLRB's prosecutions of Beverly in an effort to obtain employment with Beverly. Moreover, given that Dotson was a Beverly Vice President at the time of the alleged statement, Trump's statement implies that Dotson successfully secured his job at Beverly on the basis of his knowledge of their ongoing litigation with the NLRB. However, none of these implications amounts to a violation of federal law-- civil or criminal. Trump's comment simply does not state or imply that Dotson has done that which the EGA prohibits: making, with an intent to influence, a communication to or appearance before any department, agency, or court in

11

connection with matters he previously supervised. See 18 U.S.C. S 207(a)(2).

Unless Trump's statement is reasonably susceptible of a defamatory meaning, plaintiffs have failed to state a claim with respect to the Town Hall meeting. See Sarkees v. Warner-West Corp., 37 A.2d 544, 546 (Pa. 1944) ("If the words are not susceptible of the meaning ascribed to them by the plaintiff, and do not sustain the innuendo, the case should not be sent to a jury."); McAndrew v. Scranton Republican Pub. Co., 72 A.2d 780, 783 (1950). We conclude that Trump's statement is incapable of conveying either of the defamatory meanings plaintiffs advance. Moreover, to the extent the statement is susceptible of another defamatory interpretation that does not constitute an accusation of criminal wrongdoing, such interpretation would not constitute slander per se and, as a result plaintiff 's complaint would be insufficient for failure to allege special damages.

IV.

Accordingly, we will affirm the order of the District Court dismissing the plaintiffs' complaint for failure to state a claim.

A True Copy:
Teste:

       Clerk of the United States Court of Appeals
       for the Third Circuit

12