**TRUDY FENSTER, Plaintiff**
**vs.**
**REGINA DECHABERT, MICHAEL DECHABERT, NICHOLAS**
**DECHABERT, JACQUELINE DECHABERT, KYE WALKER**
**individually, and THE WALKER LEGAL GROUP, LLC, Defendants**

Case No. SX-16-CV-343

Superior Court of the Virgin Islands

Division of St. Croix

August 8, 2016

23

24

25

27

LEE J. ROHN, ESQ., TRUDY FENSTER, ESQ., Christiansted, St. Croix, USVI, *For Plaintiff Trudy Fenster.*

SEMAJ I. JOHNSON, ESQ., K.A. Rames, P.C., Christiansted, St. Croix, USVI, *For Defendants Kye Walker and The Walker Legal Group, LLC.*

DONOVAN M. HAMM, JR., ESQ., Hamm Eckard, LLP, Gallows Bay, St. Croix, USVI, *For Defendants Regina DeChabert, Michael DeChabert, Nicholas DeChabert, and Jacqueline DeChabert.*

DUNSTON, *Judge*

## MEMORANDUM OPINION

(August 8, 2016)

Pending before the Court is Defendants' Motion to Dismiss and Motion for Extension of Time. Defendants' Motion for Extension of Time will be granted, while their Motion to Dismiss will be granted in part as to Plaintiff's claims for fraud, negligent misrepresentation, and intentional infliction of emotional distress, but denied with respect to the remaining claims.

## RELEVANT FACTUAL & PROCEDURAL HISTORY

This action involves a property dispute between Plaintiff Trudy Fenster, Defendants Regina DeChabert, Michael DeChabert, Nicholas DeChabert, and Jacqueline DeChabert, (collectively, "Owners") and Defendants Kye Walker and the Walker Legal Group, LLC ("WLG"). On May 23, 2016, Fenster filed a Complaint against Defendants, and on June 2, 2016, Fenster filed an Emergency Application for Temporary Restraining Order and Preliminary Injunction. In pertinent part, Fenster alleges:

The Owners own real property located at 16AA Church Street, Christiansted, St. Croix ("the Property") and WLG, whose sole member is Kye Walker, is a month to month holdover tenant of the Property under an expired lease ("the Lease").[1] When Fenster became interested in purchasing the Property, she contacted Walker and inquired whether Walker or WLG "were interested in purchasing the [P]roperty."[2] Walker informed Fenster that while Walker and WLG "were interested in purchasing the property, [they] were not in a financial position to do so[,]" and expressed to Fenster that "they would be happy to see [Fenster] purchase the [P]roperty."[3]

Fenster then began negotiations with the Owners "and finalized a purchase price of $285,000[,]" upon which Fenster's realtor "executed a formal offer to purchase" with the Owners.[4] On March 25, 2016, Fenster and the Owners entered into a Contract for Purchase ("the Contract"), which contemplated "closing sixty (60) days from the effective date of the contract and any extensions."[5] In Fenster's view, the Owners represented and warranted in the Contract that the Owners, as the sellers, "own[ ] good, merchantable, and insurable fee simple title to the [P]roperty, free and clear of all liens, mortgages, leases, easements, right of way, agreements, restricts, covenants, and any other encumbrance of any type," that no options to purchase had been granted to any person or entity, and

---

[1] Compl. ¶¶ 9-10.
[2] Compl. ¶ 15.
[3] Compl. ¶¶ 15-16.
[4] Compl. ¶¶ 17-18.
[5] Compl. ¶¶ 18-19, 26-27.

that the Owners would take no actions that "would make any of the . . . representations or warranties untrue . . . ."[6]

In accordance with the Contract, Fenster took actions and incurred expenses, including, *inter alia*, placing $5,000.00 in an escrow account, applying for a loan to cover a portion of the purchase price, and securing the services of a commercial appraiser.[7] On March 31, 2016, the Owners "provided [Fenster] with the leases of the current tenants" of the Property and a Rental History and Profit and Loss Statement as required under the inspection provision of the Contract.[8] Upon review, Fenster discovered that WLG was in arrears on rental payments, WLG "had not paid the rental increases mandated by the lease agreement" and, in Fenster's view, the Lease between WLG and the Owners only gave WLG an option to purchase the Property "upon timely making rental payments and not being in default."[9]

"[O]ut of an abundance of caution," Fenster contacted WLG and Walker and inquired as to whether "they had seen . . . [Fenster's] offer to purchase . . . [the Property], and if so, what were their thoughts."[10] Walker commented on the purchase price but gave no indication "that [Walker] would try to purchase the [P]roperty[,] nor did [Walker or WLG] claim they had a valid option to purchase [the Property]."[11] Fenster "continued to perform and prepare for the closing[,]" and the Owners informed Fenster "that they had taken steps to protect their warranties provided in the Contract; to wit, as a result of WLG's default in the month to month tenancy, [the Owners] gave WLG a Notice to Quit the Premise[s]."[12] "On May 4, 2016, on the eve of closing, [Fenster] learned" that the Owners were given notice by WLG and Walker that WLG intended to exercise its option to purchase the Property.[13] According to Plaintiff, the Owners "are in the process of providing the title to the subject property to . . . WLG,

---

[6] Compl. ¶¶ 22-25.
[7] Compl. ¶¶ 19-22, 28-32.
[8] Compl. ¶¶ 33-34.
[9] Compl. ¶¶ 35-37.
[10] Compl. ¶ 38.
[11] Compl. ¶ 39.
[12] Compl. ¶¶ 40-41.
[13] Compl. ¶ 42.

despite WLG not having a valid option to purchase as of March 25, 2016."[14]

Fenster filed this action seeking a declaratory judgment that "WLG did not have a valid option to purchase on March 25, 2016 or at any other time" and that Fenster "has a valid contract entitling her to specific performance and to the title and possession" of the Property.[15] Plaintiff claims the Owners' actions constitute breach of contract and requests that the Court direct the Owners to "specifically perform the Contract and deliver the real property title to the Plaintiff."[16] Alternatively, Fenster seeks money damages for the Owners' purported breach of contract.[17] In addition, Plaintiff asserts the following claims against the Owners: breach of the duty of good faith and fair dealing, detrimental reliance, and negligent misrepresentation.[18] As to Walker and WLG, Fenster asserts claims of tortious interference with a contract, fraud and negligent misrepresentation, unjust enrichment, and intentional infliction of emotional distress.[19]

In her June 2, 2016, Emergency Application for Temporary Restraining Order and Preliminary Injunction, Fenster requests that the Court issue a temporary restraining order ("TRO") and preliminary injunction against Defendants, enjoining Defendants "from selling and or purchasing the [P]roperty . . . to any person or entity until th[e] Court has issued a declaration as to the validity of . . . Plaintiff's claim for specific performance of the [Contract]" and "the option to purchase" as contained in the Lease between WLG and the Owners.[20] On June 6, 2016, all Defendants filed a joint Opposition to Plaintiff's Emergency Application for Temporary Restraining Order and Preliminary Injunction. Fenster filed a Reply on June 9, 2016.

On June 20, 2016, Walker and WLG filed a Motion to Dismiss under FED. R. CIV. P. 12(b)(1) and 12(b)(6), to which Fenster filed an Opposition on June 27, 2016. By Order entered on July 11, 2016, Walker and WLG

---

[14] Compl. ¶ 43.

[15] Compl. ¶¶ 56-57.

[16] Compl. ¶¶ 61-62.

[17] Compl. ¶¶ 58-59.

[18] Compl. ¶¶ 63-79.

[19] Compl. ¶¶ 80-102.

[20] Pl.'s Appl. for TRO and Prelim. Inj., pp. 1, 11.

33

were directed to Reply by July 15, 2016, but, on July 7, 2016, Walker and WLG filed an unopposed Motion for Extension of Time, seeking to extend the deadline in which to Reply to July 22, 2016. On July 19, 2016, Walker and WLG filed their Reply. In addition, on July 7, 2016, the Owners filed an Answer to the Complaint.[21]

On July 13, 2016, the Court contemporaneously issued a Memorandum Opinion and Temporary Restraining Order temporarily enjoining the Owners from selling the Property to any person or entity, and Walker and WLG from purchasing the Property, until a preliminary injunction hearing could be held on August 15, 2016.[22] However, on July 18, 2016, the Owners filed a Notice of Mootness of TRO, informing the Court that, in their view, the TRO is moot because the sale of the property from the Owners to WLG's assignee, Kye Walker, P.C., closed on July 8, 2016, and, at that time, there was no order in effect prohibiting the closing of the transaction.[23] Consequently, the Owners advised that the Property was conveyed to Kye Walker, P.C., on July 8, 2016.[24] Given this development, and recognizing that Defendants did not move to dissolve the Temporary Restraining Order, the Court entered an Order on July 20, 2016, amending the Temporary Restraining Order to prohibit Walker, WLG, and its assignees, including Kye Walker, P.C., from alienating, placing any encumbrances upon, including, *inter alia*, liens, mortgages, easements, rights of way, agreements, restrictions, and covenants, and making any substantial alterations or improvements to, the Property, until the preliminary injunction hearing could be held on August 15, 2016.[25]

---

[21] By Order entered on July 20, 2016, the Court denied Plaintiff's June 29, 2016, Request for Entry of Default against the Owners, finding that by filing the joint Opposition to Plaintiff's Application for a Temporary Restraining Order and Preliminary Injunction on June 6, 2016, and their Answer on July 7, 2016, the Owners had adequately "appeared" in this action for purposes of defending the suit under SUPER. CT. R. 32. *See* July 20, 2016, Order.

[22] *See* July 13, 2016, Mem. Op., Order, TRO. As security for the Temporary Restraining Order, the Court directed Fenster to post a bond of $14,250.00 with the Clerk of the Superior Court no later than 2:00 p.m. on Monday, July 18, 2016, which Fenster deposited on July 20, 2016. July 13, 2016, TRO. Though late, the Court accepted the bond as adequate security for the Temporary Restraining Order given the recent developments in the case. *See* July 20, 2016, Order.

[23] July 18, 2016, Owners' Notice of Mootness of TRO, ¶¶ 8-10.

[24] July 18, 2016, Owners' Notice of Mootness of TRO, ¶ 8.

[25] July 20, 2016, Am. TRO and Order.

## STANDARD

### I. Motion for Enlargement of Time.

"When an act is required or allowed to be done at or within a specified time," SUPER. CT. R. 10(a)(1) provides "[t]he court for cause shown may at any time in its discretion . . . [w]ith or without notice, order the period enlarged if application therefor is made before the expiration of the period originally prescribed or as extended by a previous order of the court."

### II. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.

 Under FED. R. CIV. P. 12(b)(6), a defendant may test the sufficiency of the pleadings against preliminary defenses by seeking dismissal for the plaintiff's "failure to state a claim upon which relief can be granted."[26] The pleading requirements of FED. R. CIV. P. 8 "require a complaint to set forth a plausible claim for relief, thus allowing courts to dismiss, under Rule 12(b)(6), complaints that fail to meet that standard."[27] According to the three-pronged analysis employed by the

---

[26] The Supreme Court of the Virgin Islands applies FED. R. CIV. P. 12(b)(6) when considering motions to dismiss for failure to state a claim upon which relief can be granted. *See Joseph v. Bureau of Corrections*, 54 V.I. 644, 649-650 (V.I. 2011). As a result, FED. R. CIV. P. 12(b)(6) is applicable to these proceedings by way of this precedent or alternatively as a last resort through SUPER. CT. R. 7. *See Vanterpool v. Gov't of the Virgin Islands*, 63 V.I. 563, 576 (V.I. 2015) ("[U]ncritical application of the rules of another court to a proceeding in the Superior Court is wholly inconsistent with our admonition that 'the Federal Rules of Civil Procedure, the Federal Rules of Criminal Procedure, and the Local Rules of the District Court should represent rules of last resort rather than first resort, and should be invoked only when a thorough review of applicable Virgin Islands statutes, Superior Court rules, and precedents from this Court reveals the absence of any other [applicable] procedure' ") (citing *Sweeney v. Ombres*, 60 V.I. 438, 442 (V.I. 2014)).

[27] *Joseph*, 54 V.I. at 649 (citing *Robles v. HOVENSA, L.L.C.*, 49 V.I. 491, 499 (V.I. 2008)) (other citations omitted); *see id.* ("While Superior Court Rule 22 provides that '[a] civil action is commenced by filing a complaint with the court,' no Superior Court rule establishes any standards with respect to the contents of a complaint. Accordingly, Federal Rule of Civil Procedure 8(a)(2) is applicable to civil actions in the Superior Court through Superior Court Rule 7"); *Ashcroft v. Iqbal*, 556 U.S. 662, 129 S. Ct. 1937, 1949, 173 L. Ed. 2d 868 (2009) ("[T]he pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the-defendant-unlawfully-harmed-me accusation") (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 127 S. Ct. 1955, 167 L. Ed. 2d 929 (2007)).

Supreme Court of the Virgin Islands in reviewing motions to dismiss based on Rule 12(b)(6):

> First, the court must take note of the elements a plaintiff must plead to state a claim so that the court is aware of each item the plaintiff must sufficiently plead. Second, the court should identify allegations that, because they are no more than conclusions, are not entitled to the assumption of truth. These conclusions can take the form of either legal conclusions couched as factual allegations or naked factual assertions devoid of further factual enhancement. Finally, where there are well-pleaded factual allegations, a court should assume their veracity and then determine whether they plausibly give rise to an entitlement of relief. If there are sufficient remaining facts that the court can draw a reasonable inference that the defendant is liable based on the elements noted in the first step, then the claim is plausible.[28]

The Virgin Islands Supreme Court has further instructed that "[t]he plausibility determination is a 'context-based' determination which should be guided by the court's 'judicial experience and common sense.' "[29] "Plausibility requires that the plaintiff allege facts that are more than simply 'consistent with a defendant's liability' and must permit the court to infer more than the mere possibility of misconduct."[30]

■ "A motion to dismiss a complaint should be denied if the factual allegations are 'enough to raise a right to relief above the speculative level' "[31] and "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests."[32] Only after satisfying this multi-step analysis can a party survive a motion to dismiss under Rule 12(b)(6).

■■ "In deciding a Rule 12(b)(6) motion to dismiss, the Court may consider 'the allegations contained in the complaint, exhibits attached

---

[28] *Joseph*, 54 V.I. at 649-650 (internal quotation marks omitted) (citations omitted).

[29] *Id.* at 650 (citing *Fowler v. UPMC Shadyside*, 578 F.3d 203, 211 (3d Cir. 2009) (quoting *Iqbal*, 556 U.S at 679)).

[30] *Id.* (citing *Fowler*, 578 F.3d at 211) (quoting *Iqbal*, 556 U.S. at 678)).

[31] *Peters v. V.I. Water & Power Auth.*, 58 V.I. 49, 54 (V.I. Super. Ct. 2013) (citing *Phillips v. County of Allegheny*, 515 F.3d 224, 232 (3d Cir. 2008)); *see also Twombly*, 550 U.S. at 555 & n.3.

[32] *Twombly*, 550 U.S. at 555.

thereto, and matters of public record.' "[33] The Court may also consider "items of unquestioned authenticity that are referred to in the challenged pleading and are integral to the pleader's claim for relief."[34] Virgin Islands courts have consistently applied FED. R. CIV. P. 12(d) in finding that all other evidence presented in connection with a Rule 12(b)(6) motion to dismiss constitutes matter outside the pleadings, which, if "presented to and not excluded by the [C]ourt," requires the conversion of the motion to one for summary judgment under FED. R. CIV. P. 56, which in turn requires that the parties "be given a reasonable opportunity to present all the material that is pertinent to the [summary judgment] motion."[35] "The decision to consider matters outside the pleadings and convert a pending motion is committed to the complete discretion of the trial court; yet, the Court recognizes that it should only be undertaken with great caution and attention to the parties' procedural rights."[36]

## ANALYSIS

### I. Motion for Extension of Time.

██ Though Walker and WLG were directed to file their Reply to Fester's Opposition to their Motion to Dismiss by July 15, 2016, WLG

---

[33] *Lockhart v. Treasure Bay V.I. Corp.*, 63 V.I. 357, 361 (V.I. Super. Ct. 2015) (citing *Beverly Enters., Inc. v. Trump*, 182 F.3d 183, 190 n.3 (3d Cir. 1999)); *e.g. First Bank of Puerto Rico v. Prosser*, 2015 V.I. LEXIS 72, at *5 (V.I. Super. Ct. 2015) (citations omitted); *Nicholas v. Damian-Rojas*, 62 V.I. 123, 127-128 (V.I. Super. Ct. 2015); *Manbodh v. Hess Oil V.I. Corp.* (In re Kelvin Manbodh Asbestos Litigation Series), 47 V.I. 375, 381-384 (V.I. Super. Ct. 2006) (citations omitted); *Sprauve v. W. Indian Co.*, 799 F.3d 226, 232, 63 V.I. 1032 (3d Cir. V.I. 2015).

[34] *Manbodh*, 47 V.I. at 382 (citations omitted).

[35] *See Island Tile & Marble, LLC v. Bertrand*, 57 V.I. 596, 613 (V.I. 2012) ("[A] party need not actually attach admissible evidence to present the court with 'matters outside the pleadings,' for unsworn representations of counsel as to factual matters — which are not themselves evidence, . . . are sufficient to transform a Federal Rule 12(b)(6) motion to a Federal Rule 56 motion pursuant to Federal Rule 12(d)") (internal and other citations omitted); *Martinez v. Colombian Emeralds, Inc.*, 51 V.I. 174, 188 n.7 (V.I. 2009) ("The motion to dismiss in this case was not converted to a Rule 56 motion for summary judgment as permitted by Federal Rule of Civil Procedure 12(c) because no notice or opportunity was provided to the parties to present pertinent Rule 56 materials"). The foregoing reveals that the Supreme Court of the Virgin Islands applies the procedure set forth in FED. R. CIV. P. 12(d) when considering "matters outside the pleadings" in connection with Rule 12(b)(6) and 12(c) motions. As a result, FED. R. CIV. P. 12(d) applies in this case. *See Vanterpool*, 63 V.I. at 576 (citations omitted).

[36] *Manbodh*, 47 V.I. at 384 (internal citations omitted).

and Walker filed their Reply on July 19, 2016. Because Walker and WLG moved to extend the deadline before the expiration of the period originally prescribed, the Court will grant WLG and Walker's July 7, 2016, Motion for Extension of Time under SUPER. CT. R. 10(a)(1) and deem the Reply filed as of July 19, 2016, *nunc pro tunc.*

## II. Motion to Dismiss for Failure to State a Claim Upon Which Relief Can Be Granted.

### A. Conversion of the Motion to Dismiss.

Fenster attached the following exhibits to her Complaint: Fenster's Contract with the Owners, which appears to be signed by all necessary parties (Exhibit 1); a Letter of Commitment from the Bank of St. Croix to finance a portion of the purchase price (Exhibit 2); WLG's lease agreement with the Owners (Exhibit 3); and the Property's Rental History and Profit and Loss Statement (Exhibit 4).[37] With their Motion to Dismiss, WLG and Walker attached copies of the following: WLG's lease agreement with the Owners (Exhibit 1); electronic mail correspondence between Walker and Fenster dated March 16, 2016 (Exhibit 2); Fenster's Contract with the Owners (Exhibit 3); electronic mail correspondence between Walker and Fenster dated April 7-8, 2016 (Exhibit 4); an Order entered on May 27, 2016, in Case No. SX-16-CV-337 (Exhibit 5); electronic mail correspondence between Walker and Fenster dated March 18, 2016 (Exhibit 6).

Without converting the motion, the Court may consider WLG and Walker's Exhibits 1 and 3, namely WLG's Lease with the Owners and Fenster's Contract with the Owners, because these exhibits were also attached with Fenster's Complaint. The Court may also consider, without converting the motion, WLG and Walker's Exhibits 2 and 4, as this correspondence is explicitly referenced in the Complaint,[38] Fenster relies on this correspondence in asserting her claims of tortious interference with a contract and fraud and negligent misrepresentation against WLG and Walker in the Complaint,[39] and Fenster has not objected to the authenticity of the correspondence. However, the Court may not consider

---

[37] *See* Compl. ¶¶ 19, 28, 33, 34 & attached Exhibits.
[38] *See* Compl. ¶¶ 14-16, 38-39.
[39] *See* Compl. ¶¶ 84, 89-91.

WLG and Walker's Exhibit 6 without converting the motion because this correspondence is not referenced in the Complaint. Finally, the Court may consider the court records attached as Exhibit 5 as public records, though the Court fails to understand their relevancy to WLG and Walker's pending Motion to Dismiss since the court records do not pertain to the viability of Fenster's claims.[40]

 The question, then, is whether the Court should consider Exhibit 6, matter outside the pleadings, and convert WLG and Walker's Motion to Dismiss. The Court finds conversion is inappropriate at this time. While the Court recognizes that, under Rule 56, a party may move for summary judgment at any time prior to thirty (30) days after the completion of discovery, it is also understood that a motion for summary judgment filed early in the proceedings risks being considered premature.[41] This matter is still in the early stages of litigation and discovery has yet to be conducted.[42] Further, Fenster has not been given a reasonable opportunity to respond to WLG and Walker's motions as if for summary judgment, as required under Rule 12(d). Consequently, when reviewing WLG and

---

[40] *See* 4 V.I.C. § 241 ("The records of every court of justice shall be public records . . ."); *see also Manbodh*, 47 V.I. at 381-384 (The Court may consider matters it can take judicial notice of without converting the motion) (internal citations omitted); *Rodriguez v. Rodriguez-Ramos*, 64 V.I. 447, 457 (V.I. 2016) ("[T]he Superior Court may take judicial notice of a fact if it represents general knowledge in the territory or it is capable of being readily determined accurately by relying on sources whose accuracy cannot be questioned reasonably") (citing *Marcelle v. People*, 55 V.I. 536, 546 & n.3 (V.I. 2011)).

[41] *See* FED. R. CIV. P. 56(b) (2010) & advisory committee note to 2010 amendments. FED. R. CIV. P. 56(b) (2010) applies as a last resort to the practice and procedure of the Superior Court through SUPER. CT. R. 7. The Court recognizes that, in *Vanterpool*, the Supreme Court of the Virgin Islands explained that in *Martin v. Martin*, 54 V.I. 379 (V.I. 2010), the Supreme Court "adopted the standard contained in a prior version of [FED. R. CIV. P. 56], [which] remains controlling in Virgin Islands courts" and does not include the amendments to FED. R. CIV. P. 56 that went into effect on December 1, 2010. *Vanterpool*, 63 V.I. at 584 n.10. Notwithstanding a review of the Virgin Islands statutes, Superior Court of the Virgin Islands rules, and precedents from the Supreme Court of the Virgin Islands reveals the absence of any other applicable procedure regarding the time limits for filing motions for summary judgment in Superior Court proceedings. *See Sweeney*, 60 V.I. at 442. As a result, the current version of FED. R. CIV. P. 56(b), as amended in 2010, regarding the time limit for filing motions for summary judgment applies in Superior Court proceedings as a last resort through SUPER. CT. R. 7.

[42] *See Callender v. Nichtern*, 32 V.I. 96, 106 (V.I. Terr. Ct. 1995) (refusing to convert a motion to dismiss into a motion for summary judgment because no discovery had been conducted) (citing *Brug v. Enstar Group, Inc.*, 755 F. Supp. 1247 (D. Del. 1991)).

39

Walker's Motion to Dismiss, the Court may only consider the Exhibits submitted by WLG and Walker that do not constitute matters outside the pleadings, namely, Exhibits 1-5.

### A. Claims against the Owners (Counts II, III, IV, V, VI).

 For various reasons, WLG and Walker argue the Counts against the Owners fail to state claims upon which relief can be granted. As Fenster points out, the Owners filed an Answer on July 7, 2016, foregoing their opportunity to assert defenses by dispositive motion under Rule 12(b). The Supreme Court of the Virgin Islands has made abundantly clear that motions to dismiss under FED. R. CIV. P. 12(b) must be brought prior to answering the Complaint[43] and within the time limits proscribed by FED. R. CIV. P. 12(a).[44] Though "under normal circumstances, a [post-answer] motion to dismiss for failure to state a claim [under FED. R. CIV. P. 12(b)(6)] may be properly considered as a motion for judgment on the pleadings [under FED. R. CIV. P. 12(c)]" because both are subject to the same legal standard, doing so would be inappropriate here.[45] The Owners have not attempted to bring a post-answer Rule 12(b) motion; rather, WLG and Walker attempt to do it for them. Nothing in the record indicates that counsel for WLG and Walker is authorized to defend the merits of this case on behalf of the Owners, who are not her clients. Indeed, the Owners are represented by separate counsel. The Court refuses to entertain WLG and Walker's arguments seeking dismissal of Fenster's claims against the Owners, which the Owners have elected not to challenge by way of a Rule 12(b) or (c) motion.[46] Consequently,

---

[43] *Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 536 (V.I. 2015) ("[A] motion to dismiss [under Rule 12(b)] filed after a party has already filed an answer is not properly before the Superior Court") (citing *Smith v. Turnbull*, 54 V.I. 369, 373-74 (V.I. 2010) and *Martinez*, 51 V.I. at 187-90).

[44] *Smith*, 54 V.I. at 373-374 ("As this Court has previously held, a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6) is allowed only if it is made before pleading, 'if a further pleading is permitted' . . . and Rule 12(a), which allows twenty days for filing responsive pleadings, normally controls the time limit on Rule 12(b) motions") (citing *Martinez*, 51 V.I. at 190 (quoting FED. R. CIV. P. 12(b)).

[45] *Rennie*, 62 V.I. at 536; *Benjamin*, 56 V.I. at 565.

[46] Counsel for WLG and Walker is reminded of the mandates in FED. R. CIV. P. 11 that "[b]y presenting to the court a pleading . . . an attorney . . . certifies that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circum-stances . . . (1) it is not being presented for any improper purpose, such as to harass, cause

Counts II, III, IV, V, and VI of the Complaint, which are solely made against the Owners, will not be dismissed.

### B. Request for declaratory relief regarding the validity of WLG's "right of first refusal" or "option to purchase" under the lease (Count I).

#### i. Standing.

Walker and WLG argue that the Complaint must be dismissed for lack of subject matter jurisdiction under FED. R. CIV. P. 12(b)(1) because Fenster lacks standing to challenge WLG's rights under the Lease.[47] Fenster agrees that this challenge is properly brought under FED. R. CIV. P. 12(b)(1).[48] However, the parties appear to rely on the flawed premise that standing is jurisdictional.

■ "The doctrine of standing, in the federal courts, has two sources, a 'prudential' or claims processing aspect reflecting the need of all courts to control the presentation of claims in the litigation to assure full and fair exploration of the issues raised, and a constitutional component based on the Article III case and controversy requirement, which restricts the scope of federal court jurisdiction."[49] The Supreme Court of the Virgin Islands has "overrule[d] any language in [its] older opinions indicating that standing is jurisdictional [and held that] standing is at best a non-jurisdictional claims-processing rule in Virgin Islands courts, since Article III of the United States Constitution does not apply to local courts and no provision of Virgin Islands law includes a case-or-controversy

---

unnecessary delay, or needlessly increase the cost of litigation; (2) the claims, defenses, and other legal contentions are warranted by existing law or by a nonfrivolous argument for extending, modifying, or reversing existing law or for establishing new law; (3) the factual contentions have evidentiary support or, if specifically so identified, will likely have evidentiary support after a reasonable opportunity for further investigation or discovery; and (4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." FED. R. CIV. P. 11 is made applicable to the Superior Court through SUPER. CT. R. 29, which provides that "Rules 10 and 11 of the Federal Rules of Civil Procedure as to form, signing and verification of pleadings and other papers shall apply to the superior court."

[47] *See* Defs.' Mot. to Dismiss, pp. 5-8.

[48] *See* Pl.'s Opp'n to Defs.' Mot. to Dismiss, pp. 8-11.

[49] *Benjamin*, 56 V.I. at 564 (citing *Elk Grove Unified Sch. Dist. v. Newdow*, 542 U.S. 1, 11-12, 124 S. Ct. 2301, 159 L. Ed. 2d 98 (2004)).

requirement."[50] As a result, the Supreme Court has held that "standing, like mootness, functions in the courts of the Virgin Islands as a claims processing rule that is subject to waiver should the party asserting the issue fail to raise it in a timely manner."[51]

 Here, WLG and Walker argue Fenster lacks standing to challenge WLG's rights under the Lease, namely the validity of WLG's "right of first refusal" or "option to purchase," because Fenster is not a party to the Lease and therefore lacks the requisite contractual privity to bring claims or obtain relief in connection the Lease. The standing issue is properly decided under FED. R. CIV. P. 12(b)(6) because Walker and WLG are essentially arguing that Fenster failed to plead a necessary element of a cognizable claim and standing is not jurisdictional.[52] Though only a claims processing rule subject to waiver, the standing issue is ripe for adjudication since WLG and Walker raise the issue in their Motion to Dismiss.[53]

---

[50] *United Corporation v. Homed*, 64 V.I. 297, 303 (V.I. 2016) (citing *Benjamin*, 56 V.I. at 564; *Hodge v. Bluebeard's Castle, Inc.*, 62 V.I. 671, 687 n.8 (V.I. 2015)) (quotation marks and other citations omitted).

[51] *Benjamin*, 56 V.I. at 564-565.

[52] *See Appriva S'holder Litig. Co. v. ev3, Inc.*, 937 A.2d 1275, 1285 (Del. 2007) ("[W]here a plaintiff is not arguing that the court lacks the authority to grant the relief requested to any plaintiff (i.e., lacks subject matter jurisdiction), but rather is arguing that the court cannot grant relief to these particular plaintiffs, the motion is more properly decided under Rule 12(b)(6) because the plaintiff has failed to plead a necessary element of a cognizable claim, not because the court does not have jurisdiction") (citing *Vitanza v. Bd. of Trade of N.Y.*, 2002 U.S. Dist. LEXIS 4499, at *17 n.10 (S.D.N.Y. Mar. 18, 2002)); *see also United Corp. v. Hamed*, 64 V.I. 297, 304 (V.I. 2016) ("Thus, these standing discussions [in prior opinions issued by the Supreme Court of the Virgin Islands] did not involve the Superior Court's subject-matter jurisdiction, but instead went to whether the party bringing suit had a right to the relief it was seeking. This, of course, goes to the merits of the cause of action — not the Superior Court's authority to hear the case in the first place") (citations omitted). Notably, Walker and WLG are not arguing that the Court lacks the authority to grant the requested relief, but, rather, argue that the Court cannot grant the requested relief to Fenster. *See id.*

[53] *Supra*, n.51; *see In re Guardianship of Smith*, 54 V.I. 517, n.5 (V.I. 2010) ("Significantly, because claims-processing rules are equivalent to the statute of limitations and other affirmative defenses, litigants who seek to invoke a claims-processing rule to dismiss or limit an appeal must do so at the first opportunity prior to the case becoming fully briefed."); *Brady v. Cintron*, 55 V.I. 802, 815 (V.I. 2011) ("While claims-processing rules can be equitably tolled or even waived, courts have 'no authority to create equitable exceptions to jurisdictional requirements and litigants cannot by waiver or forfeiture confer jurisdiction where it is otherwise lacking' ") (citing *Menominee Indian Tribe of Wisconsin v. United States*, 614 F.3d 519, 524, 392 U.S. App. D.C. 202 (D.C. Cir. 2010) (internal citations omitted)).

██ █ Fenster seeks, *inter alia*, a declaratory judgment that "WLG did not have a valid option to purchase" under the Lease.[54] Pursuant to the Virgin Islands Declaratory Judgment Act, 5 V.I.C. §§ 1261-1272, the Superior Court has the "power to declare rights, status, and other legal relations whether or not further relief is or could be claimed."[55] The "decision to entertain a declaratory action is within the discretion of the Court,"[56] but doing so "is permissible only where a justiciable controversy exists."[57] To meet this requirement:

> [T]he controversy at issue must be 'definite and concrete, touching the legal relations of parties having adverse legal interests. It must be a real and substantial controversy admitting of specific relief through a decree of conclusive character, as distinguished from an opinion advising what the law would be upon a hypothetical state of facts.'[58]

---

[54] Compl. ¶ 57.

[55] 5 V.I.C. § 1261.

[56] *Pate v. Gov't of the Virgin Islands*, 62 V.I. 271, 285 (V.I. Super. Ct. 2015) (citing *Flavo-Rich v. Quinn*, 18 V.I. 530 (D.V.I. 1981)).

[57] *Bd. of Dirs. of Shibui Condo. Ass'n v. Aldan Solutions, LLC*, 2015 V.I. LEXIS 100, at *11 (V.I. Super. Ct. Aug. 31, 2015) (citations omitted).

[58] *Id.* (citing *Luis v. Dennis*, 751 F.2d 604, 607 (3d Cir. 1984); *Aetna Life Insurance Co. v. Haworth*, 300 U.S. 227, 240-241, 57 S. Ct. 461, 81 L. Ed. 617 (1937)). This "justiciable controversy" requirement derives from federal jurisprudence reconciling the federal Declaratory Judgment Act with Article III's jurisdictional requirement that a court only rule on actual cases and controversies. Indeed, in upholding the federal Declaratory Judgment Act, the United States Supreme Court dispelled "doubts about the compatibility of declaratory-judgment actions with Article III's case-or-controversy requirement [in] . . . holding . . . that an appropriate action for declaratory relief *can* be a case or controversy under Article III . . . [because] the phrase 'case of actual controversy' in the [federal Declaratory Judgment] Act refers to the type of 'Cases' and 'Controversies' that are justiciable under Article III." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 126-127, 127 S. Ct. 764, 166 L. Ed. 2d 604 (2007) (citing *Aetna*, 300 U.S. at 240) (internal and other citations omitted); *see Pate*, 62 V.I. at 286 n.29 (citing *St. Thomas-St. John Hotel & Tourism Assoc., Inc. v. Gov't of United States Virgin Islands*, 218 F.3d 232, 240 (3d Cir. 2000) ("A declaratory judgment may issue only where the constitutional standing requirements of a justiciable controversy are satisfied")). However, since Virgin Islands courts are not Article III courts, it stands to reason that the discretion of a Virgin Islands court to grant declaratory relief is not constrained by a "justiciable controversy" requirement, at least in the same manner as federal courts, since the jurisdiction of Virgin Islands courts does not depend on satisfying the Article III "case-or-controversy" requirement. Notwithstanding, the Court recognizes the Virgin Islands Legislature has expressly provided that the Virgin Islands Declaratory Judgment Act "should be 'harmonize[d], as far as possible, with federal laws and regulations on the subject of declaratory judgments and decrees.' " *Estate of George v. George*, 50 V.I. 268, 274 (V.I. 2008)

43

■ Here, the Complaint contains sufficient factual allegations that plausibly give rise to an entitlement to the requested declaratory relief because a justiciable controversy exists between Fenster and Defendants in that Fenster contends, and Defendants dispute, that WLG did not have a valid "right of first refusal" or "option to purchase" the Property. This clearly touches on the Owners' conflicting contractual rights as they relate to their purported breach of the Contract with Fenster, as well as Fenster and WLG's conflicting property rights.

■ Though the Virgin Islands Declaratory Judgment Act provides a remedy, it does not confer standing.[59] Therefore, although Fenster has adequately shown that declaratory relief is available as a potential remedy in this case, Fenster must also establish she has standing to bring the claim underlying her request for declaratory relief.[60] WLG and Walker argue that Fenster lacks standing to bring her underlying claim, namely that WLG's "right of first refusal" or "option to purchase" under the Lease is invalid, because, "[t]o have contractual standing to seek declaratory relief or to challenge the rights of the parties in privity, Fenster must either be a party to the contract or an intended third party beneficiary."[61] On the other hand, Fenster argues she has standing to challenge the validity of the

---

(citing 5 V.I.C. § 1272). In light of this, the Court will apply the definition of "justiciable controversy" set forth in Virgin Islands jurisprudence because it mirrors that employed by federal courts, but the Court notes that Virgin Islands courts could potentially deviate from this interpretation, should the facts and circumstances warrant it. *See* Helen Hershkoff, Article, *State Courts and the "Passive Virtues": Rethinking the Judicial Function*, 114 Harv. L. Rev. 1833 (2001).

[59] The Supreme Court of the Virgin Islands has, on many occasions, interpreted statutes that confer standing, but, unlike those statutes, the Virgin Islands Declaratory Judgment Act does not confer standing. 5 V.I.C. §§ 1261-1272; *See, e.g., Rennie v. Hess Oil V.I. Corp.*, 62 V.I. 529, 547 (V.I. 2015) (holding that an employment-discrimination statute conferred "standing" on an employee to bring a private cause of action); *Hansen v. O'Reilly*, 62 V.I. 494, 511 (V.I. 2015) (holding that a write-in candidate had "standing" to seek a recount under the election statutes); *Haynes v. Ottley*, 61 V.I. 547, 556 n.4 (V.I. 2014); *Mapp v. Fawkes*, 61 V.I. 521, 534 n.11 (V.I. 2014); *Bryan v. Fawkes*, 61 V.I. 201, 222-23 n.12 (V.I. 2014); *V.I. Narcotics Strike Force v. Pub. Emps. Relations Bd.*, 60 V.I. 204, 212 (V.I. 2013).

[60] 22A AM. JUR. 2D *Declaratory Judgments Property* § 214, 868 (2013) (A plaintiff must "establish standing to bring a claim for declaratory relief") (footnotes omitted) & § 203, at 857 ("Since a declaratory judgment statute generally does not expand the interests of the parties, it does not relieve a party from showing that it has standing to bring a declaratory judgment action based on the underlying action") (footnotes omitted).

[61] Defs.' Mot. to Dismiss, p. 7.

Lease provision because Fenster's request for declaratory relief "arises directly from [Fenster's C]ontract with the Owner[s]."[62]

■ As recognized by the Supreme Court of the Virgin Islands, "some aspects of Article III's requirement that a court only rule on actual cases and controversies have been incorporated into Virgin Islands jurisprudence[,]"[63] such as the tripartite test employed by federal courts when assessing the constitutional dimensions of standing.[64] Indeed, in noting "it is 'prudential' for the Court, in its discretion, to hear cases in which the plaintiff has a personal interest[,]"[65] this Court has addressed standing by applying this three-part test, which requires that the plaintiff "allege [a] personal injury fairly traceable to the defendant's allegedly unlawful conduct and likely to be redressed by the requested relief.' "[66]

■ ■ To establish the personal injury requirement of standing in terms of a claim for declaratory relief, a plaintiff need only show "a very significant possibility of future harm"[67] by an "injury in fact" to a "legally protected interest" that is "concrete and particularized" and "actual or

---

[62] Pl.'s Opp'n to Defs.' Mot. to Dismiss, p. 11.

[63] Farrell v. People of the Virgin Islands, 54 V.I. 600, 607-608 (V.I. 2011) (citing V.I. Gov't Hosp. & Health Facilities Corp. v. Gov't of the V.I., 50 V.I. 276, 280 (V.I. 2008) (citing Dennis v. Luis, 741 F.2d 628, 630 (3d Cir. 1984)).

[64] See Donastorg v. Virgin Islands, 45 V.I. 259, 269 (V.I. Terr. Ct. 2003) ("[T]his Court has adopted the standing requirements of the Sierra Club test as part of its jurisprudence") (citing Environment Association v. Department of Planning, 44 V.I. 218 (Terr. Ct. 2002) (holding that absent a "statutory conferral" of standing, a plaintiff must meet the Sierra Club test for standing) and Vermont Agency of Natural Resources v. U.S. ex rel. Stevens, 529 U.S. 765, 771, 120 S. Ct. 1858, 1861-1862, 146 L. Ed. 2d 836 (2000)); see Sierra Club v. Morton, 405 U.S. 727, 92 S. Ct. 1361, 31 L. Ed. 2d 636 (1972); see also Walsh v. Daly, 2014 V.I. LEXIS 36, at **4-5 (V.I. Super. Ct. June 18, 2014) (citing Hein v. Freedom From Religion Found., Inc., 551 U.S. 587, 598, 127 S. Ct. 2553, 168 L. Ed. 2d 424 (2007)); Turnbull v. Twenty-Sixth Legislature, 48 V.I. 127, 131 (V.I. Super. Ct. 2006); but see United Corporation v. Hamed, 64 V.I. 297, 302-305 (V.I. 2016) ("In federal constitutional law, a plaintiff must have standing to invoke a federal court's subject-matter jurisdiction — requiring the plaintiff to 'demonstrate (i) an actual or threatened injury that was (ii) caused by the defendant's actions and is (iii) capable of judicial redress' . . . . [However,] 'standing' — as that concept is understood in federal constitutional law — does not exist in any form in Virgin Islands courts.") (citations omitted).

[65] Walsh, 2014 V.I. LEXIS 36, at *5 (citing Romano v. V.I. Gov't Hospitals & Health Facilities Corp., 60 V.I. 168 (V.I. Super. Ct. 2014)).

[66] Walsh, 2014 V.I. LEXIS 36, at **4-5 (citing Hein, 551 U.S. at 598).

[67] 22A AM. JUR. 2D Declaratory Judgments Property § 214, 868 (2013).

imminent, not 'conjectural' or 'hypothetical[.]' "[68] Notably, "the existence of an injury is not a prerequisite to declaratory relief," nor is it required that the wrong or breach be committed "before a party may be entitled to a declaratory judgment."[69] With respect to the causation requirement, a "plaintiff seeking declaratory relief must adequately allege that the asserted . . . [significant possibility of future harm by an injury in fact] is causally connected to the challenged conduct"[70] in that it must be "fairly . . . trace[able] to the challenged action of the defendant, and not . . . the result [of] the independent action of some third party not before the court."[71] Finally, a plaintiff must adequately allege that the significant possibility of future harm by an injury in fact "can be redressed through declaratory relief."[72]

▮ Here, Fenster alleges that the Owners breached the Contract by refusing to sell Fenster the Property, which constitutes an injury in fact to Fenster's legally protected contractual rights under her Contract with the Owners. Insofar as this refusal stemmed from WLG's "right of first refusal" or "option to purchase" under WLG's Lease with the Owners, the injury is traceable to the challenged conduct of the Owners. The redressability element is satisfied because a determination as to the validity of WLG's "right of first refusal" or "option to purchase" under the Lease would likely afford Fenster relief from uncertainty regarding her rights and interests under her Contract with the Owners, including, *inter alia*, the extent of the Owners' purported breach of the Contract.[73] As a result, Fenster has satisfied all three (3) requirements of the constitutional dimensions of standing with respect to her claim for

---

[68] *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992) (internal and other citations omitted).

[69] *Bd. of Dirs. of Shibui Condo. Ass'n*, 2015 V.I. LEXIS 100, at *11 (citing 5 V.I.C. § 1263) ("A contract may be construed either before or after there has been a breach thereof").

[70] *Pagán v. Calderón*, 448 F.3d 16, 27 (1st Cir. 2006) (citations omitted).

[71] *Lujan*, 504 U.S. at 560-561 (internal and other citations omitted).

[72] 22A AM. JUR. 2D *Declaratory Judgments Property* § 214, 868 (2013); *Lujan*, 504 U.S. at 561 ("[I]t must be 'likely,' as opposed to merely 'speculative,' that the injury will be 're-dressed by a favorable decision' ") (citations omitted).

[73] *See* 5 V.I.C. § 1270 ("This chapter [setting forth the Virgin Islands Declaratory Judgment Act] is declared to be remedial; its purpose is to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered").

declaratory relief regarding the validity of WLG's "right of first refusal" or "option to purchase."

Notwithstanding, the Court recognizes that federal jurisprudence contemplates prudential limitations on standing, which can preclude a federal court from hearing a case "even when the plaintiff has alleged injury sufficient to" satisfy the constitutional dimensions of standing.[74] Directly relevant to the contractual standing issue raised in the case *sub judice* is the prudential limitation that "the plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties[,]"[75] though federal "jurisprudence recognizes third party standing under certain circumstances."[76] It appears Virgin Islands courts have not addressed this prudential limitation specifically, though courts in this jurisdiction have considered similar issues under contract law, upon which WLG and Walker base their contractual standing argument.[77]

---

[74] *See Mylonakis v. M/T Georgios M.*, 909 F. Supp. 2d 691, 722 (S.D. Tex. 2012) ("Once constitutional standing is established a court considers whether there exist any "judicially self-imposed limits on the exercise of federal jurisdiction") (citing *Association of Community Organizations for Reform Now ("ACORN") v. Fowler*, 178 F.3d 350, 356 (5th Cir. 1999) (quoting *Bennett v. Spear*, 520 U.S. 154, 117 S.Ct. 1154, 1161, 137 L. Ed. 2d 281 (1997)); *Warth v. Seldin*, 422 U.S. 490, 499, 95 S. Ct. 2197, 45 L. Ed. 2d 343 (1975) (citations omitted).

[75] *Warth*, 422 U.S. at 499 (citing *Tileston v. Ullman*, 318 U.S. 44, 63 S. Ct. 493, 87 L. Ed. 603 (1943)); *Allen v. Wright*, 468 U.S. 737, 751, 104 S. Ct. 3315, 82 L. Ed. 2d 556 (1984) (Prudential considerations embraced by the standing doctrine include "the general prohibition on a litigant's raising another person's legal rights . . . and the requirement that a plaintiff's complaint fall within the zone of interests protected by the law invoked") (citing *Valley Forge Christian College v. Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 474-475, 102 S. Ct. 752, 70 L. Ed. 2d 700 (1982)); *see Culhane v. Aurora Loan Servs. of Neb.*, 708 F.3d 282, 290 (1st Cir. Mass. 2013) ("[These prudential] considerations raise a potential question as to whether the plaintiff's standing is jeopardized by the prudential concern that a litigant should not normally be permitted to assert the rights and interests of a third party").

[76] *Pa. Psychiatric Soc'y v. Green Spring Health Servs.*, 280 F.3d 278, 288 (3d Cir. Pa. 2002) (collecting cases); *see United States Dep't of Labor v. Triplett*, 494 U.S. 715, 720, 110 S. Ct. 1428, 108 L. Ed. 2d 701 (1990) ("When, however, enforcement of a restriction against the litigant prevents a third party from entering into a relationship with the litigant (typically a contractual relationship), to which relationship the third party has a legal entitlement (typically a constitutional entitlement), third-party standing has been held to exist") (citations omitted).

[77] Defs.' Mot. to Dismiss, pp. 6-7.

■ Given the specific circumstances at issue, the Court must conduct the three-part analysis mandated in *Banks v. Int'l Rental & Leasing Corp.*[78] to determine the extent of common law third party standing with respect to contract claims in the Virgin Islands because the Supreme Court of the Virgin Islands has not addressed the issue in accordance with the analytical mandates under *Banks*. In so doing, the Court must balance the following non-dispositive factors set forth in *Banks*:

(1) whether any Virgin Islands courts have previously adopted a particular rule;

(2) the position taken by a majority of courts from other jurisdictions; and

(3) most importantly, which approach represents the soundest rule for the Virgin Islands.[79]

### 1. Approaches taken by courts in this jurisdiction.

As discussed, the federal prudential limitation that "the plaintiff generally must assert his [or her] own legal rights and interests, and cannot rest his [or her] claim to relief on the legal rights or interests of third parties"[80] has been addressed by Virgin Islands courts to some degree, but only in relation to contract law and through a mechanistic application of the Restatements of Law that is explicitly verboten under *Banks*. Specifically, the Supreme Court of the Virgin Islands cited the RESTATEMENT (SECOND) OF CONTRACTS §§ 302, 304, 315 in holding that the only person who can sue to enforce promises in a contract is the

---

[78] "As established in *Banks v. Int'l Rental & Leasing Corp.*, 55 V.I. 967, 981-84 (V.I. 2011), and subsequent cases, when confronted with an issue of Virgin Islands common law that . . . [the Supreme Court of the Virgin Islands] has not resolved — or that has been addressed only through erroneous reliance on former 1 V.I.C. § 4 — courts [in this jurisdiction] must 'engage in a three-factor analysis: first examining which common law rule Virgin Islands courts have applied in the past; next identifying the rule adopted by a majority of courts of other jurisdictions; and then finally — but most importantly — determining which common law rule is soundest for the Virgin Islands.' " *Machado v. Yacht Haven U.S.V.I., LLC*, 61 V.I. 373, 380 (V.I. 2014) (citing *Better Bldg. Maint. of the V.I., Inc. v. Lee*, 60 V.I. 740, 757 (V.I. 2014); *Gov't of the V.I. v. Connor*, 60 V.I. 597, 603 (V.I. 2014); *Walters v. Walters*, 60 V.I. 768, 777 n.11 (V.I. 2014)).

[79] *Simon v. Joseph*, 59 V.I. 611, 613 (V.I. 2013) (interpreting *Banks*); *Hamed v. Hamed*, 63 V.I. 529, 535 (V.I. 2015) (discussing the evolution of *Banks* and its progeny).

[80] *Supra*, n.75.

promisee under the contract or a third party that was an intended beneficiary of the promise, but that "a beneficiary to the contract whose benefit is merely incidental to the promise in the contract has no right to sue to enforce the promise."[81] Through a rote application of the RESTATEMENT (SECOND) OF CONTRACTS § 302 or earlier cases that rely thereon, which distinguish between intended and incidental third party beneficiaries, the Territorial Court, Superior Court, the United States District Court of the Virgin Islands, and United States Court of Appeals for the Third Circuit have similarly held that only a party to a contract may sue on that contract unless he or she is an intended third party beneficiary to the contract.[82] Obviously, as federal courts, the District Court and Third Circuit are bound by federal precedent and the prudential limitations on standing recognized in federal jurisprudence.[83]

However, the Court need not craft a rule regarding who may sue for breach of contract or enforce promises under a contract, nor must the Court address the complexities of third party beneficiary law in this jurisdiction, because the case *sub judice* deals strictly with a plaintiff's

---

[81] *Petrus v. Queen Charlotte Hotel Corp.*, 56 V.I. 548, 555 (V.I. 2012) (citing RESTATEMENT (SECOND) OF CONTRACTS §§ 302, 304, 315) (other citation omitted).

[82] *See, e.g., Bertrand v. Cordiner Enters.*, 2013 V.I. LEXIS 67, at *22 (V.I. Super. Ct. Nov. 15, 2013) ("Typically, 'a person must be in privity to a contract to sue for damages for breach of such contract[,] . . . under certain conditions a person may sue as a third party beneficiary to a contract' ") (citing *Sanchez v. Innovative Tel. Corp.*, 2007 U.S. Dist. LEXIS 93255, at *4 (D.V.I. Nov. 30, 2007) (citing *Kmart Corp. v. Balfour Beatty*, 994 F. Supp. 634, 636, 38 V.I. 251 (D.V.I. 1998) (quoting RESTATEMENT (SECOND) OF CONTRACTS § 302)); *Paez v. Pittsburg-Des Moines Corp.*, 21 V.I. 237, 240-241 (V.I. Terr. Ct. 1985) ("In order to bring suit on the PDM/Riggers contract, plaintiff must be either a party to or an intended beneficiary of the contract") (citing RESTATEMENT (SECOND) OF CONTRACTS § 302), *rev'd on other grounds*, 1985 U.S. Dist. LEXIS 24230, at *8 (D.V.I. Sept. 10, 1985); *Banks v. International Rental and Leasing Corp.*, 49 V.I. 970, 975 (D.V.I. 2008) (citing *Sanchez*, 2007 U.S. Dist. LEXIS 93255, at *4); *Williams v. V.I. Water & Power Authority*, 672 F.2d 1220, 1228, 19 V.I. 642 (3d Cir. V.I. 1982) (citing RESTATEMENT (SECOND) OF CONTRACTS § 302)).

[83] *See Holt v. United States IRS*, 2006 U.S. Dist. LEXIS 82948, at *15 (D.V.I. 2006); *Rohn v. AT&T Mobility, LLC*, 50 V.I. 1024, 1028-1029 n.3 (D.V.I. 2008) (citing *Davis v. Phila. Hous. Auth.*, 121 F.3d 92, 96 (3d Cir. 1997); *Oxford Assocs. v. Waste Sys. Auth.*, 271 F.3d 140, 145-46 (3d Cir. 2001)). In determining whether the prudential standing rule barring third parties from asserting the rights of others should be applied, the United States Supreme Court has delineated two factual elements that courts should consider: (1) "relationship of the litigant to the person whose right he [or she] seeks to assert"; and (2) "the ability of the third party to assert his [or her] own right." *See Singleton v. Wulff*, 428 U.S. 106, 114-116, 96 S. Ct. 2868, 49 L. Ed. 2d 826 (1976) (plurality opinion) (allowing third-party standing in abortion cases); *see also Powers v. Ohio*, 499 U.S. 400, 410-11, 111 S. Ct. 1364, 113 L. Ed. 2d 411 (1991).

standing to seek *declaratory relief* regarding a contract to which the plaintiff is not a party. Consequently, the Court's *Banks* analysis will not address who may sue to enforce promises in a contract, but, rather, the narrow issue of whether the circumstances at issue here warrant a finding of standing despite Fester's reliance upon a contract to which she is not a party.

### 2. Approaches taken by other jurisdictions.

The second factor under *Banks*, "determining the position taken by a majority of courts from other jurisdictions[,] directs the Superior Court to consider all potential sides of an issue by viewing the potentially different ways that other states and territories have resolved a particular question."[84] As discussed, state and local courts are not subject to Article III and thus are not bound by the traditional constraints on standing.[85] Consequently, "[t]he source of standing rules varies from state to state, as does their content."[86] "[A]lthough almost every state deviates in some way from the federal model [of justiciability], very few states have considered how they may construct their own justiciability doctrines to meet the special needs of state and local governance."[87]

With respect to the contractual standing issue, most other jurisdictions apply some form of the general rule that "a non-party to a contract has no standing to bring a claim on that contract."[88] As a result, many courts hold

---

[84] *Connor*, 60 V.I. at 603 (citations omitted).

[85] *See ASARCO, Inc. v. Kadish*, 490 U.S. 605, 109 S. Ct. 2037, 2045, 104 L. Ed. 2d 696 (1989) ("We have recognized often that the constraints of Article III do not apply to state courts, and accordingly the state courts are not bound by the limitations of a case or controversy or other federal rules of justiciability even when they address issues of federal law, as when they are called upon to interpret the Constitution or, in this case, a federal statute") (citations omitted); M. Ryan Harmanis, Article, *States' Stances on Public Interest Standing*, 76 OHIO ST. L.J. 729, 739-740 (2015) ("Nearly every state court begins an analysis of standing with a variation of the following statement: 'Unlike the federal system, the judicial power of the state . . . is not constitutionally restricted by the language of Article III of the United States Constitution requiring "cases" and "controversies," since no similar requirement exists in the [state's] Constitution.' This is an unquestionable tenet of state law, and one firmly supported by the Supreme Court of the United States") (citations omitted).

[86] Hershkoff, 114 HARV. L. REV. at 1854.

[87] *Id.* at 1841.

[88] 17A AM. JUR. 2D *Contracts* § 416, 400-401 (2004); *Southwestern Pub. Serv. Co. v Thunder Basin Coal Co.*, 978 P.2d 1138, 1144 (Wyo. 1999) (citations omitted); (footnotes omit-

that "a party [who] lacks standing to pursue a contract cause of action . . . cannot bring a declaratory judgment action regarding that contract."[89] As non-Article III courts, other state jurisdictions typically do not discuss the two factual elements considered by federal courts when addressing the prudential limitation against third party standing, but some have carved out their own exceptions to the general prohibition against third party standing on contract claims, particularly when considering facts similar to those at issue in this case.[90]

When presented with facts similar to those alleged in the case *sub judice*, some jurisdictions strictly adhere to the prohibition against third party standing and conclude that a plaintiff that is a party to a purchase agreement lacks standing to litigate the validity of another's right of first refusal if the plaintiff is a "stranger" to the contract granting the right of first refusal.[91] But, in so ruling, those jurisdictions tend to highlight that the purchase agreement was explicitly made subject to a right of first refusal and did not grant the plaintiff a corresponding right to challenge "or second guess" the validity of the right of first refusal.[92]

On the other hand, several other jurisdictions have contrastingly held that when a plaintiff alleges a defendant breached a purchase agreement to which the plaintiff is a party and that defendant afforded another a right of first refusal in a separate contract, the plaintiff has standing to challenge the validity of the right of first refusal despite being a "stranger" to that

---

ted); *Spanish Oaks, Inc. v. Hy-tree, Inc.*, 265 Neb. 133, 138, 655 N.W.2d 390 (2003) ("The general rule is that only a party (actual or alleged) to a contract can challenge its validity . . . Obviously, the fact that a third party would be better off if a contract were unenforceable does not give him standing to sue to void the contract") (internal quotation marks and citation omitted).

[89] 22A AM. JUR. 2D *Declaratory Judgments* § 214, 869 (2013) (footnotes omitted); *see Amica Mut. Ins. Co. v. Fassarella Pro Painting & Design, LLC*, 2011 Conn. Super. LEXIS 1725, at **12-13 (Conn. Super. Ct. July 8, 2011) (unpublished).

[90] *See infra.*

[91] *See DePetrillo v. Belo Holdings, Inc.*, 45 A.3d 485, 492 (R.I. 2012) (citing *Brough v. Foley*, 525 A.2d 919 (R.I. 1987), *but see Mruk v. Mortgage Elec. Registration Sys.*, 82 A.3d 527, 536 (R.I. 2013) (recognizing an exception "to the general rule precluding third-party standing to challenge a contract is narrow and confined to the circumstances of a mortgagor challenging an 'invalid, ineffective, or void' assignment of the mortgage") (citations omitted); *Bischoff v. Bletz*, 183 Vt. 235, 949 A.2d 420, 425-427 (2008); *see also Amica Mut. Ins. Co.*, 2011 Conn. Super. LEXIS 1725, at **12-13; *White Hen Pantry, Inc. v. Rak Woo Cha*, 214 Ill. App. 3d 627, 574 N.E.2d 104, 158 Ill. Dec. 310 (1991).

[92] *See DePetrillo*, 45 A.3d at 492 (citing *Brough*, 525 A.2d at 921).

contract because the plaintiff's "legal rights under the purchase agreement . . . are directly affected by . . . [the] right of first refusal."[93] These jurisdictions reason that "[t]he plaintiff has a cognizable legal interest in the validity of the restriction he [or she] challenges, and that is enough to confer standing."[94] However, in finding the plaintiff has standing, some of these jurisdictions emphasize that the defendant failed to place the plaintiff on notice of the right of first refusal,[95] while others "reject the suggestion that the plaintiff, who proceeded with his [or her] plans to purchase the property without regard to his prior knowledge of the right of first refusal, by implication abandoned, or lost, his standing to challenge the restriction's validity."[96] In refusing to consider the issue of plaintiff's notice of the right of first refusal, the Massachusetts Supreme Court reasoned that to hold otherwise "would discourage third-party offers on property that may be affected by preemptive restrictions of this type and place a would-be purchaser 'in the precarious position of being

---

[93] See Greenhall Invs., L.L.C. v. Wiese Dev. Corp., 14 Neb. App. 155, 160-161, 706 N.W.2d 552 (2005); Spanish Oaks, 265 Neb. 133; Stuart Kingston v. Robinson, 596 A.2d 1378, 1382-1383 (Del. 1991); Bortolotti v. Hayden, 449 Mass. 193, 197-198, 866 N.E.2d 882 (2007); National Land & Building Corp. v. Kazim, 25 A.D.3d 513, 514, 810 N.Y.S.2d 132 (2006) (citing Isa v. Gas Elezaj Corp., 303 A.D.2d 636, 760 N.Y.S.2d 178 (2003)).

[94] Bortolotti, 449 Mass. at 197-198 (citing G. L. c. 231A, § 9 (purpose of G. L. c. 231A is to enable court "to remove, and afford relief from, uncertainty and insecurity with respect to rights, duties, status and other legal relations, and it is to be liberally construed and administered"); Stuart Kingston, 596 A.2d at 1383 (prospective purchasers challenging third party's exercise of first refusal right "have a concrete and distinct claim and if not permitted to assert it will suffer a direct injury"); Spanish Oaks, 265 Neb. at 138 (finding that the plaintiffs had standing to challenge the use restrictions [in a sublease to which they were not parties] because the plaintiffs were "alleging a breach of the [initial] lease, to which [they were] parties").

[95] Cf. Stuart Kingston, 596 A.2d at 1382-1383 ("As a matter of equity, [the defendant] cannot now assert a claim of lack of standing based on knowledge of a preemptive right where the absence of such knowledge is attributable, in part, to [the defendant's] failure to place third parties on notice of the existence of that right") and Greenhill Invs., L.L.C., 14 Neb. App. 155, at 161 (In finding the plaintiff had standing to challenge the right of first refusal granted to another in a separate contract, the court explained that "[t]he significant difference in the present case is that the purchase agreement between [plaintiff] and [defendant] made no mention of a right of first refusal") with Brough, 525 A.2d 919 (The Rhode Island Supreme Court found the plaintiff lacked standing to challenge a right of first refusal granted by defendant to another in a separate contract because the purchase agreement between plaintiff and defendant specifically mentioned that the plaintiffs' rights were subject to a right of first refusal in a separate contract between the defendant and another party).

[96] Bortolotti, 449 Mass. at 197-198.

unable to vindicate its contractual rights, while allowing a seller to rely on any spurious claim so long as it implicated a third party's rights, in order to avoid a contract with impunity.' "[97]

### 3. Soundest rule for the Virgin Islands.

 The third factor under *Banks* requires the Court to adopt the soundest rule for the Virgin Islands. Considering the foregoing, the Court finds the soundest rule for the Virgin Islands is:

> When a plaintiff is a party to a contract and the plaintiff's rights under that contract are directly affected by a restriction under a separate contract to which the plaintiff is not a party, the plaintiff has standing to seek declaratory relief regarding the validity of that restriction, so long as all persons or entities whose contractual rights or interests are potentially affected by the declaratory judgment are joined as parties to the suit.

This rule rejects the strict approach to the general prohibition against third party standing on contract claims in favor of a broader approach that coincides with the policy of the Supreme Court of the Virgin Islands that standing operates only as a judicially imposed restraint, thus affording this Court greater discretion and flexibility in assessing standing than other courts that jurisdictionally dependent on it.[98] This rule also aligns with the purposes of the Virgin Islands Declaratory Judgment Act "to settle and to afford relief from uncertainty and insecurity with respect to rights, status and other legal relations; and is to be liberally construed and administered[,]"[99] fostering consistency in the availability of declaratory relief in this jurisdiction.

 Importantly, this rule does not allow for unrestrained intrusion upon the contractual rights of others because the plaintiff, as a non-party to a contract, only has standing to seek declaratory relief. Therefore, this

---

[97] *Id.* (citing *National Land & Bldg. Corp.*, 25 A.D.3d at 514).

[98] *Accord State ex rel. Ohio Acad. of Trial Lawyers v. Sheward*, 86 Ohio St. 3d 451, 1999 Ohio 123, 715 N.E.2d 1062, 1081 (1999) ("Unlike the federal courts, state courts are not bound by constitutional strictures on standing; with state courts standing is a self-imposed rule of restraint. State courts need not become enmeshed in the federal complexities and technicalities involving standing and are free to reject procedural frustrations in favor of just and expeditious determination on the ultimate merits") (citations omitted).

[99] V.I.C. § 1270.

rule does not permit a plaintiff to sue for breach of contract, enforce promises under, or seek damages arising from a contract to which the plaintiff is not in privity. Moreover, this rule affords the Court the discretion to consider the particular factual circumstances before it and determine, on a case-by-case basis, whether the facts sufficiently demonstrate that the plaintiff's contractual rights are directly affected by the contract to which the plaintiff is not a party.[100] Finally, the prudential concern regarding the risk of adversely or unnecessarily adjudicating the rights and interests of the parties to the contract is ameliorated because this rule applies only when all necessary parties are joined. As a result, the parties to the contract will have an opportunity to assert their own rights and interests under the contract and respond to the plaintiff's challenge thereto.

 Applying this rule here, the Court finds that the Complaint contains adequate factual allegations to plausibly suggest that Fenster's contractual rights under her Contract with the Owners are directly affected by a provision under the Lease because, if WLG's "right of first refusal" or "option to purchase" is deemed invalid, the potential relief available with respect to Fenster's breach of contract claim against the Owners includes specific performance to compel the conveyance of the Property to Fenster, but if the provision is deemed valid, then Fenster can only recover monetary damages from the Owners. In addition, WLG, Walker, and the Owners are parties to this suit and have the opportunity to respond to Fenster's challenge and assert their rights in accordance with their own contractual rights and interests as active participants. Nevertheless, the Court recognizes that, after Fenster commenced this action, the Owners conveyed the Property to a non-party, WLG's

---

[100] While the Court recognizes that the legal operation of a contract is a question of law, standing requires inquiry into the facts of each case. *See United Corp. v. Tutu Park, Ltd.*, 55 V.I. 702, 707 (V.I. 2011) ("Ordinarily, when the terms of a contract are unambiguous, the Superior Court treats the issue of the meaning of those terms as a question of law, but if the terms are ambiguous, the issue of the meaning of the terms becomes a question of fact"); *See also Ram Constr. Co. v. American States Ins. Co.*, 749 F.2d 1049, 1052-1053 (3d Cir. Pa. 1984) (providing an exhaustive discussion of the distinction between the definitions of interpretation and construction and the respectively applicable standards of review); *See Lujan*, 504 U.S. at 561 ("At the pleading stage, general factual allegations of injury resulting from the defendant's conduct may suffice [to establish standing], for on a motion to dismiss we 'presum[e] that general allegations embrace those specific facts that are necessary to support the claim' ") (citations omitted).

assignee, "Kye Walker, P.C." Consequently, the Court concludes that Fenster has standing to challenge the validity of WLG's "right of first refusal" or "option to purchase" under the Lease despite Fenster not being a party to the Lease, but, grantee "Kye Walker, P.C.," must be added as a defendant to this suit.

In light of the foregoing, the Court rejects WLG and Walker's contention that Fenster's purported lack of standing "bars each and every cause of action against WLG and the Owner[s] . . . premised on the Lease, including Count I (Declaratory Relief); Count VI (Negligent Representation of Owner Defendants) and; Count VII (Tortious Interference with a Contract)."[101] Fenster has standing to seek declaratory relief regarding the validity of WLG's "right of first refusal" or "option to purchase" under the Lease and, as previously discussed, WLG and Walker may not seek dismissal of claims against the Owners. WLG and Walker's standing argument is inapposite to Fenster's claim for "tortious interference with a contract," the viability of which the Court discusses below, because this cause of action is premised on WLG and Walker's purported interference with Fenster's Contract with the Owners, not the Lease.

### ii. Adequacy of the factual allegations in the Complaint regarding the purported invalidity of WLG's "right of first refusal" or "option to purchase" under the Lease.

Apart from the standing issue, WLG and Walker contend that Fenster's claims challenging the validity of the "right of first refusal" or "option to purchase" under the Lease must be dismissed because "Fenster fails to plausibly allege the Owner[s] . . . terminated the Lease" so as to render the provision invalid.[102] WLG and Walker also claim that Fenster "fails to mount any challenge whatsoever to the [right of first refusal]" because the Complaint incorrectly refers to WLG's "right of first refusal" as an "option to purchase."[103] The Court finds these arguments lack merit.

Specifically, WLG and Walker argue that the Complaint is deficient in challenging the validity of WLG's "right of first refusal" or "option to

---

[101] Defs.' Mot. to Dismiss, p. 8.

[102] Defs.' Mot. to Dismiss, p. 8.

[103] Defs.' Mot. to Dismiss, pp. 8-10.

purchase" under the Lease because Fenster fails to allege that the Lease was terminated or that the Owners held WLG in default of its obligations under the Lease.[104] Fenster argues such factual allegations are not required to satisfy the pleading requirements of FED. R. CIV. P. 8 and state a plausible claim that the Lease provision was invalid at the time Fenster offered to purchase the Property.

The Court is able to infer from the following factual allegations of the Complaint: at all material times, WLG was a tenant in possession of the Property owned by the Owners;[105] WLG entered into the Lease with the Owners on February 8, 2011;[106] the Owners "provided Plaintiff with the leases of [the Property's] current tenants . . . [and] the Profit and Loss Statement and the rental history of the building[,]"[107] which "evidenced that WLG was . . . in arrears on rental payments" on twenty-three occasions during the course of its Lease; and that "WLG had also not paid the rental increases in rent mandated by the lease."[108] With her Complaint, Fenster attaches a copy of the Lease, which Fenster references in alleging that "[w]hile there as an indication that Defendant WLG on February 8, 2011 had been provided an option to purchase the subject property upon timely making rental payments and not being in default, that option was not viable as WLG was clearly in default."[109] Though this is a legal conclusion regarding the operation of the Lease, the purported existence of these provisions in the Lease constitutes a factual allegation.[110]

■■■ The foregoing factual allegations indicate that the Lease granted WLG a right with respect to purchasing the Property, which the parties characterize as either a "right of first refusal" or "option to purchase," during the original term of the Lease or any subsequent renewal thereof. But, that WLG's original term was not renewed because WLG was in default for failing to make timely rent payments and renewal under the Lease is available when "Tenant is not in default of any of Tenant's

---

[104] Defs.' Mot. to Dismiss, p. 8.

[105] Compl. ¶¶ 9-10.

[106] See Compl. ¶ 37 (citing Exhibit 3).

[107] Compl. ¶ 33.

[108] Compl. ¶¶ 34-36.

[109] Compl. ¶ 37 (citing Exhibit 3).

[110] See Compl. ¶ 37 & Exhibit 3, Article 2, Section 2, Article 13, Section 13.1, Article 15.

obligations hereunder."[111] These allegations are sufficient to plausibly suggest that WLG's "right of first refusal" or "option to purchase" was invalid, or more aptly, unenforceable, at the time Fenster offered to purchase the Property. Consequently, the facts, as pled, adequately state a claim for declaratory relief regarding the validity of WLG's "right of first refusal" or "option to purchase" under the Lease.

█ Notably, the Court is able to reach this conclusion without determining whether the contested Lease provision is an "option" or "right of first refusal." In assessing the sufficiency of the Complaint, the Court must look to the factual allegations, which adequately suggest that the contested Lease provision constitutes a restriction on the Property that was no longer valid at the time Fenster offered to purchase the Property. Whether the contested Lease provision constitutes an "option" or "right of first refusal" is a legal conclusion that does not affect the sufficiency of the factual allegations in the Complaint. Consequently, WLG and Walker's argument that Fenster fails to challenge the contested Lease provision merely because the Complaint refers to it as an "option" rather than a "right of first refusal" is without merit.

### C. Tortious Interference with a Contract (Count VII).

█ WLG and Walker challenge the sufficiency of Fenster's claim for "tortious interference with a contract" on the grounds that the Complaint fails to allege facts that show the impropriety of Walker and WLG's conduct.[112] Though the Complaint styles Fenster's claim as one for "tortious interference with a contract,"[113] the Court recognizes this cause of action as a tort claim for "intentional interference with existing contractual relations."[114] "To prevail on a claim for intentional interference with existing contractual relations, a plaintiff in this jurisdiction must prove: (1) the existence of a contract between the plaintiff and a third party; (2) that the defendant knew of that contract (3) that the defendant interfered with the contract using improper means or

---

[111] *See* Compl., Exhibit 3, Article 13, Section 13.1.

[112] Defs.' Mot. to Dismiss, pp. 15-16.

[113] *See* Compl. ¶¶ 80-86.

[114] *See Donastorg v. Daily News Publishing Co., Inc.*, 63 V.I. 196, 286-289 (V.I. Super. Ct. 2015) (conducting *Banks* analysis with respect to a claim for intentional interference with existing contractual relations).

with an improper motive; and (4) that the plaintiff was damaged as a result."[115]

The Complaint alleges that Fenster and the Owners entered into the Contract, namely, a purchase agreement regarding the sale of the Property,[116] Fenster and Walker exchanged correspondence regarding Fenster's offer,[117] Walker informed Fenster that she was not in a financial position to exercise the "option,"[118] WLG's past actions constituted a breach of the Lease, rendering WLG's "option to purchase" invalid,[119] "on the eve of closing, [Fenster] learned that WLG and . . . Walker had given . . . [the Owners] notice that she [sic] wanted to exercise her now invalid option to purchase[,]"[120] resulting in the Owners breaching the Contract with Fenster in that the Owners "are in the process of providing the title to the subject property to . . . WLG, despite WLG not having a valid option to purchase as of March 25, 2016."[121] It is undisputed that the Owners have since conveyed the Property to WLG's assignee, "Kye Walker, P.C."[122]

 In construing these factual allegations in a light most favorable to Plaintiff and drawing all reasonable inferences therefrom, the Court finds the Complaint contains adequate facts to plausibly suggest that Walker knew of Fenster's Contract with the Owners and interfered, thereby damaging Fenster because the Owners did not go through with the sale. As discussed at length above, the factual allegations are sufficient to plausibly suggest WLG's "right of first refusal" or "option to purchase" was invalid. Nevertheless, the factual allegations are less clear as to the remaining element, that WLG's "interference was the product of either an improper means or an improper motive," which distinguishes "legitimate competition from unlawful activity" and actions that are "motivated by a

---

[115] *Id.* at 288-289.

[116] Compl. ¶¶ 17-19, 26-27.

[117] Compl. ¶¶ 38-39. *See* Compl. ¶ 42.

[118] Compl. ¶¶ 14-16, 38-39.

[119] Compl. ¶¶ 33-37.

[120] Compl. ¶ 42.

[121] Compl. ¶ 43.

[122] *See* Owners' Notice of Mootness of TRO; Defs.' Mot. for Recons.; Pl.'s Mot. to Deny the Walker Defs.' Mot. for Recons. & Mot. for Sanctions.

genuine business purpose" from those that are not.[123] Though it is a close call, given that this matter is only in the pleadings stage, and applying the standard for construing pleadings under Rule 12(b)(6), the Court also finds the factual allegations plausibly suggest WLG interfered with the Contract through improper means by demanding to exercise an "option to purchase" that they knew was no longer valid because the Lease had not been renewed, which sufficiently satisfies the element at this stage in the proceedings. Consequently, the Complaint states a claim for intentional interference with existing contractual relations against WLG and Walker.

### D. Negligent Misrepresentation (Count VIII).

██ ██ WLG and Walker challenge the sufficiency of Fenster's claim for "negligent misrepresentation."[124] This Court has adopted the following as the soundest rule for the Virgin Islands regarding a claim for negligent misrepresentation:

> [O]ne who, in the course of his or her business, profession, or em-
> ployment, or in any other transaction in which he or she has a pecu-
> niary interest, supplies false information for the guidance of others, is
> subject to liability for pecuniary loss caused to those others due to the
> others' justifiable reliance on the information, but only if he or she
> failed to exercise reasonable care or competence in obtaining or com-
> municating the information.[125]

Furthermore, in addressing claims of negligent misrepresentation, the Supreme Court of the Virgin Islands has made clear that "an alleged misrepresentation must be factual in nature and not promissory or relating to future events that might never come to fruition . . . This requirement is rooted in the principle that it is impossible to be negligent in failing to ascertain the truth or falsity of one's own future intentions."[126]

██ The factual allegations pled in the Complaint establish that Walker represented to Fenster, on behalf of herself and WLG, the Property's

---

[123] *Donastorg*, 63 V.I. 196, 288-289.

[124] Defs.' Mot. to Dismiss, pp. 18-19.

[125] *Merchants Commercial Bank v. Oceanside Village, Inc.*, 64 V.I. 3, 27-28 (V.I. Super. Ct. 2015) (conducting *Banks* analysis with respect to a claim for negligent misrepresentation).

[126] *Chestnut v. Goodman*, 59 V.I. 467, 476 (V.I. 2013) (internal and other citations omitted).

tenant and Walker's law practice of which Walker is "the sole member," that Walker and WLG "were interested in purchasing the [P]roperty, but were not in a financial position to do so" and "gave no indication that [WLG and Walker] would try to purchase the [P]roperty" by exercising WLG's "right of first refusal" or "option to purchase" under the Lease or otherwise.[127] Though the purported misrepresentations were made in the course of Walker's business, they obviously pertain to Walker's future intentions. Thus, the representations do not satisfy the requirement that the information be false at the time they were made. Moreover, noticeably absent from the Complaint are any factual allegations that Walker or WLG owed a duty to Fenster to disclose their plans to purchase the Property, but failed to do so.[128] Therefore, the Complaint fails to allege that Walker and WLG failed to exercise reasonable care or competence in communicating the information at issue, an essential element of the claim. For these reasons, the Complaint fails to state a claim for negligent misrepresentation against WLG and Walker.

### E. Fraud (Count VIII).

 WLG and Walker also challenge the sufficiency of Fenster's claim for "fraud," which is pled in Count VIII of the Complaint alongside Fenster's claim for negligent misrepresentation.[129] This Court has adopted the following as the soundest rule for the Virgin Islands with regard to a claim for fraudulent misrepresentation:

> One who makes a misrepresentation of fact, opinion, intention, or law that he or she either knew or had reason to know was false, and that was made for the purpose of inducing another to act or refrain from acting

---

[127] Compl. ¶¶ 3-4, 14-16, 38-39, 42, 88-91. However, the Court notes that the Complaint contradictorily alleges that WLG and Walker "gave no indication that [they] would try to purchase the [P]roperty[,] nor did they claim they had a valid option to purchase," but later alleges that Walker and WLG "falsely represented to . . . [Fenster] that they had an option to purchase the . . . [P]roperty." Compl. ¶¶ 38-39, 88.

[128] See Merchants Commercial Bank, 64 V.I. 3, 29 ("[B]y alleging that Plaintiff 'had a duty to, but failed to, disclose' certain information to Defendants, Defendants have satisfied the requirement of leading that Plaintiff failed to exercise reasonable care or competence in communicating the information at issue").

[129] Defs.' Mot. to Dismiss, pp. 15-18.

on it, is subject to liability to the other for pecuniary loss caused by the other's justifiable reliance on the misrepresentation.[130]

Similar to the tort of negligent misrepresentation, "[t]he tort of fraudulent misrepresentation 'requires an express representation which is false or misleading at the time it is made.' "[131] Further, as WLG and Walker point out, when alleging fraud, a party is subject to the heightened pleading requirements of FED. R. CIV. P. 9(b) that require the plaintiff to "state with particularity the circumstances constituting fraud . . . ."[132] In construing pleadings under this standard, this Court has considered Third Circuit precedent, which provides that "the purpose of Rule 9(b) [is] 'to place the defendants on notice of the precise misconduct with which they are charged, and to safeguard defendants against spurious charges of immoral and fraudulent behavior . . . allegations of "date, place or time" fulfill these functions, but nothing in the rule requires them. Plaintiffs are free to use alternative means of injecting precision and some measure of substantiation into their allegations of fraud.' "[133]

WLG and Walker contend, *inter alia*, that Fenster's claim for fraud fails because the Complaint is "bereft of any cognizable, plausible or particular 'intent-to-deceive' allegations" and fails to sufficiently allege that Fenster's reliance on Walker's representation that Walker and WLG "were not in a position to purchase the property" was justified.[134] In contrast, Fenster argues that that Complaint sufficiently pleads fraud by alleging: (1) WLG and Walker "would not be pursuing any right [to purchase the Property] . . . because they were ill positioned to do so[,]" and (2) WLG and Walker knew the "option to purchase" was invalid, but pursued the "option" anyway by "telling [Fenster] they had the right to

---

[130] *Merchants Commercial Bank*, 64 V.I. 3, 21-22 (conducting *Banks* analysis with respect to a claim for fraudulent misrepresentation).

[131] *Pollara v. Chateau St. Croix, LLC*, 2016 V.I. LEXIS 49, at *24 (V.I. Super. Ct. May 3, 2016) (citing *Goodman*, 59 V.I. at 475-476).

[132] *Mayhem Enters., LLC v. Powell*, 2015 V.I. LEXIS 132, at *7 (V.I. Super. Ct. Oct. 30, 2015) (citing FED. R. CIV. P. 9(b)). FED. R. CIV. P. 9 is applicable, as a last resort, through SUPER. CT. R. 7. *See Vanterpool*, at 576 (citing *Sweeney*, 60 V.I. at 442).

[133] *Merchants Commercial Bank*, 64 V.I. 3, 24 (citing *Seville Industrial Machinery Corp. v. Southmost Machinery Corp.*, 742 F.2d 786, 791 (3d Cir. 1984) (internal quotation marks omitted).

[134] Defs.' Mot. to Dismiss, p. 17.

purchase the [P]roperty[,] and . . . subsequently inducing the . . . [the Owners] to breach [Fenster's C]ontract."[135]

 The Court agrees with WLG and Walker and finds the factual allegations in the Complaint fail to establish a claim for fraudulent misrepresentation. With respect to the purported misrepresentation that WLG and Walker "would not be pursuing any right [to purchase the Property] . . . because they were ill positioned to do so," the Complaint fails to establish that this was false or misleading *at the time it was made*. Moreover, the Complaint also fails to sufficiently allege that Fenster's reliance on this representation was justifiable, given the allegation that WLG and Walker "informed [Fenster] they were interested in purchasing the [P]roperty."[136]

The Complaint also fails to establish a fraudulent misrepresentation claim with respect to WLG and Walker's purported misrepresentation that WLG had a valid "option to purchase," when in fact, it was unenforceable. It can reasonably be inferred that such a representation would induce Fenster to refrain from pursuing the Property, but factual allegations in the Complaint make clear that Fenster "continued to perform and prepare for the closing" in accordance with her Contract with the Owners until they purportedly breached the Contract.[137] This negates any suggestion that Fenster relied on the representation to her detriment. Consequently, the Complaint also fails to state a claim for fraudulent misrepresentation against WLG and Walker because the factual allegations of the Complaint do not sufficiently establish the essential elements of the claim.

### F. Unjust Enrichment (Count IX).

 "A cause of action for quantum meruit, also known as unjust enrichment, will ordinarily lie in a case where the defendant 'receives something of value to which he is not entitled and which he should restore' to the plaintiff."[138] To establish a claim for unjust enrichment, a plaintiff must prove: "(1) that the defendant was enriched; (2) that such

---

[135] Pl.'s Opp'n to Defs.' Mot. to Dismiss, p. 20.
[136] *See* Compl. ¶¶ 14-16.
[137] Compl. ¶¶ 40, 42-43.
[138] *Walters*, 60 V.I. at 776 (quoting *Maso v. Morales*, 57 V.I. 627, 635 n.9 (V.I. 2012)).

enrichment was at the plaintiff's expense; (3) that the defendant had appreciation or knowledge of the benefit; and (4) that the circumstances were such that in equity or good conscience the defendant should return the money or property to the plaintiff."[139]

 Fenster alleges that WLG and Walker were enriched by the time, effort, and funds expended by Fenster in negotiating and securing the terms of the Contract to purchase the Property,[140] which is at Fenster's expense because the Owners breached their Contract with Fenster and are in the process of selling the Property to WLG and Walker under the same terms as the Contract with Fenster.[141] Fenster alleges WLG and Walker knew or appreciated that for which they were enriched because Fenster and Walker communicated on multiple occasions regarding Fenster's offer to purchase the Property and her overall search for local properties,[142] but "wait[ed] until [Fenster] researched the market, attended numerous showings, and negotiated a $100,000 reduction" in the Property's purchase price before "attempting to exercise" WLG's invalid "option."[143] Since the Court has already found that the Complaint sufficiently alleges WLG's "right of first refusal" or "option to purchase" was unenforceable at the time the Owners entered into the Contract with Fenster, and Fenster alleges Walker and WLG knew of the unenforceability but sought to purchase the Property anyway, Fenster has alleged circumstances were such that in equity or good conscience WLG and Walker should return the money or Property to Fenster. Therefore, the Complaint states a claim for unjust enrichment against WLG and Walker.[144]

---

[139] *Id.* at 779-780.

[140] Compl. ¶¶ 17-22, 27, 52-53, 99.

[141] Compl. ¶ 43.

[142] Compl. ¶¶ 14-16, 38-39; *see* Compl. 42; *see also* Defs. Mot. to Dismiss, Exhibits 2 & 4.

[143] Compl. ¶¶ 99, 52-53.

[144] However, this conclusion should not be construed as evincing the Court's approval or agreement with Fenster's request that Walker and WLG return "unjust gains," such as the "$100,000 reduced purchase price." *See* Compl. ¶ 99.

## G. Intentional Infliction of Emotional Distress (Count X).

██ This Court has previously adopted the provisions of RESTATEMENT (SECOND) OF TORTS § 46 as the soundest rule for the Virgin Islands with regard to claims alleging intentional infliction of emotional distress.[145]

> Under section 46, the tort of intentional infliction of emotional distress is committed when "one who by extreme and outrageous conduct intentionally or recklessly causes severe emotional distress to another. . . ." The actor's conduct must be "so outrageous in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious and utterly intolerable in a civilized society."[146]

██ The Complaint alleges that Fenster has "suffered mental anguish" and that WLG and Walker's "actions constitute intentional infliction of emotional distress."[147] In addition to these conclusory allegations, which are not entitled to the assumption of truth, Fenster also alleges that over the course of three (3) years she "has spent an inordinate amount of time researching properties, attending showings . . . and selecting the best property for her purposes and price-range" and that "there are no other affordable or equivalent options on the market" apart from the Property she attempted to purchase from the Owners.[148] These allegations fail to describe the nature or extent of the emotional distress and do not plausibly suggest Fenster suffered from emotional distress that was severe.

██ Moreover, the Complaint also fails to allege factual allegations of behavior by WLG and Walker that could reasonably be found "utterly intolerable in a civilized society." Indeed, "[t]he tort of intentional infliction of emotional distress is meant to impose liability for only

---

[145] *First Bank of Puerto Rico v. Prosser*, 2015 V.I. LEXIS 72, at **9-12 (V.I. Super. Ct. 2015) (conducting *Banks* analysis with respect to a claim for intentional infliction of emotional distress); *see also Mina v. Hotel on the Cay Time-Sharing Ass'n*, 62 V.I. 220, 235 (V.I. Super. Ct. 2015).

[146] *Prosser*, 2015 V.I. LEXIS 72, at *11 (citing RESTATEMENT (SECOND) OF TORTS, § 46) (internal and other citations omitted).

[147] Compl. ¶¶ 54, 101.

[148] Compl. ¶¶ 52-54.

extreme and outrageous conduct."[149] "Examples within the Virgin Islands that have been deemed to *not* state a claim for intentional infliction of emotional distress include (1) termination of an employee; (2) failure to warn firefighters that they are operating in a building containing asbestos; (3) and a financial institution's alleged breach of its contractual duty of confidentiality and good faith during bankruptcy proceedings and negotiations, concerning a mortgage account with that institution."[150]

The allegations here relative to Fenster's real estate transaction falling through due to WLG's exercise of a purportedly invalid "right of first refusal" or "option to purchase" simply cannot rise to a level that would permit a claim for severe emotional distress to stand. As a result, the allegations are insufficient as a matter of law to permit a plausible inference establishing the elements of the tort of intentional infliction of emotional distress. Therefore, the Complaint fails to state a claim for intentional infliction of emotional distress against WLG and Walker.

## III. Leave to Amend Complaint to Cure Deficiencies.

██ Although not binding, on several occasions this Court has applied Third Circuit precedent, which mandates that "if a complaint is subject to a Rule 12(b)(6) dismissal a . . . court must permit a curative amendment unless such an amendment would be inequitable or futile . . . [and] must provide the plaintiff with this opportunity even if the plaintiff does not seek leave to amend."[151] "An amendment would be futile if the complaint, as amended, would fail to state a claim upon which relief could be granted."[152] Because Plaintiff could potentially allege facts in an amended Complaint that substantiate Count VIII, amendment is not futile with respect to the claims for negligent misrepresentation and fraudulent

---

[149] *Hiss v. Commercial Security, LLC, Inc.*, 2016 V.I. LEXIS 59, at *11 (V.I. Super. Ct. Apr. 8, 2016) (citing *Donastorg*, 63 V.I. 196, 299).

[150] *Id.* at *11-12 (citing *Donastorg*, 63 V.I. 196, 299, 303) (emphasis added).

[151] *Adams v. North West Co., Inc.*, 63 V.I. 427, 445 (V.I. Super. Ct. 2015) (citing *Benjamin v. Bennerson*, 2012 V.I. LEXIS 7, at *7 (V.I. Super. Ct. Feb. 13, 2012); *James-St. Jules v. Thompson*, 2015 V.I. LEXIS 74, at **12-13 (V.I. Super. Ct. June 25, 2015) ("[D]espite these deficiencies in the complaint, the Court must grant [plaintiff] an opportunity to amend her complaint unless amendment would be futile") (citing *Alston v. Parker*, 363 F.3d 229, 235 (3d Cir. 2004)).

[152] *James-St. Jules*, 2015 V.I. LEXIS 74, at *13 (citing *Great Western Mining & Mineral Co. v. Fox Rothschild LLP*, 615 F.3d 159, 175 (3d Cir. 2010)).

misrepresentation. Therefore, the Court will grant Plaintiff the opportunity to amend her Complaint to cure the aforementioned deficiencies.

However, the Court finds that amendment to Count X would be futile because the factual allegations regarding WLG and Walker's conduct cannot satisfy the threshold requirements necessary to state a claim for intentional infliction of emotional distress. Thus, Fenster will not be permitted to amend Count X of the Complaint, which will be dismissed.

## CONCLUSION

For the foregoing reasons, Defendants Walker and WLG's Motion for Extension of Time will be granted, but their Motion to Dismiss will be granted only in part as to Plaintiff's claims for fraud (Count VIII), negligent misrepresentation (Count VIII), and intentional infliction of emotional distress (Count X). However, Plaintiff will be granted leave to amend the Complaint as to Count VIII and must add WLG's assignee, "Kye Walker, P.C.," as a defendant.

An Order consistent with this Memorandum Opinion shall follow.